Steven WHITING

v.

George I. KIRK, Jr., Robert S. Choquette, E.J. Petrarca, and the Town of South Kingstown.

Civ. A. No. 89–0111P.

United States District Court, D. Rhode Island.

June 21, 1991.

---

**2.** When "contempt sanction [are] intended to coerce future compliance ... a court has wide discretion...." *G & C Merriam*, 639 F.2d at 41.

Choquette, E.J. Petrarca, and the Town of South Kingstown. The individual defendants have moved for judgment notwithstanding the verdict or a new trial. The sole issue is whether or not, at the conclusion of the plaintiff's case, on motions by Kirk, Choquette and Petrarca for directed verdicts premised on the right to qualified immunity, I erred in denying the same. Following from the denial of qualified immunity, judgment was entered in favor of the plaintiff on his allegations of false arrest and unlawful imprisonment. The jury determined the issue of damages and municipal liability; it found in favor of the Town but did award the plaintiff $500.00 compensatory damages against all other defendants, plus $9,000.00 in punitive damages against defendant Kirk and $1,000.00 in punitive damages against defendant Choquette.

### I.

I will not discuss facets of the litigation not pertinent to the issue at hand. The genesis of this action is a trespass and ejectment judgment entered by the State Superior Court against the plaintiff by his former landlord. An execution issued and was mailed by George J. Bauerle, III, the landlord's attorney, to defendant Kirk, who was empowered by law to serve certain state writs and executions. This particular writ, however, was issued in error by the court clerk on an improper form and contained language which wrongfully authorized a body attachment. Contrary to Rhode Island law, no hearing had been held and the body attachment was signed by the clerk, not a judge. Unfortunately, Bauerle, who never intended to attach the body of the plaintiff but only his automobile, did not notice the defect before sending the writ to Kirk.

Kirk proceeded to the plaintiff's house. While in the process of seizing the plaintiff's vehicle, he noticed, for the first time, the body attachment language. Kirk testified that the form of the writ was not the usual form used for a body attachment. Nevertheless, he phoned the town police

Kevin M. Brill, Providence, R.I., for Steven Whiting.

Robert B. Gates, Providence, R.I., for George I. Kirk, Jr.

Terrence G. Simpson, Town Solicitor, Providence, R.I., for Town of South Kingstown, Robert S. Choquette and E.J. Petrarca.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is a 42 U.S.C. § 1983 suit against defendants George I. Kirk, Jr., Robert S.

for assistance. Officer Petrarca arrived and Kirk showed him the writ. Not being familiar with body attachments, Petrarca phoned his superior, Lieutenant Choquette, who arrived shortly thereafter and examined the writ. He, together with Kirk and Petrarca, forcibly arrested the plaintiff, who was jailed for two days.

At trial, further testimony revealed that the town police department had what was known as the "Blue Book," a manual detailing police department policy. It sets out the circumstances under which an arrest can be effected: pursuant to a warrant, when a crime has been witnessed, or when there is probable cause to believe a crime has been committed.

## II.

■ As to Kirk, the defense argues that his "actions in effectuating the execution against [the plaintiff] was 'intimately related to the judicial process' since the writ of execution was issued by the Superior Court and forwarded to Kirk by an officer of the court [i.e., the landlord's attorney]. By attaching the body of plaintiff, Kirk was continuing the 'judicial process' in an attempt to complete the judicial process through satisfaction of the court judgment." Kirk argued that he was therefore entitled to absolute immunity, citing as authority *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1980).

Counsel argument, however, is unpersuasive. He strains the *Briggs* teaching. *Briggs* discusses the concept of absolute immunity for "functions intimately associated with the judicial phase of the criminal process." *Id.* 106 S.Ct. at 1097. Although the issuance and serving of warrants is a part of the administration of criminal justice, it is not at the heart of the "judicial phase" of the process. *See id.* (referring to officers applying for warrants). The judicial phase includes the actions of judges and prosecutors, not the conduct of all actors in the chain.

■ Moreover, police officers, such as the individual defendants, are traditionally afforded "qualified immunity," not "absolute immunity." *See Harlow v. Fitzgerald,*

457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The other cases cited by the defendants stand only for the proposition that a facially valid writ protects the server. Someone wronged by such a writ must attack the issuance of the writ, not the server. Here we do not have a facially valid writ. Next I turn to the question of qualified immunity. The prevailing standard for qualified immunity is that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The First Circuit has stated that in determining objective reasonableness, "a reasonable public official, particularly a police officer, is expected to know the law. [I must examine, therefore] ... whether the events ... violated clearly established constitutional rights." *Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987). "[I]n determining an official's claim of qualified immunity, the court judges the official's then knowledge of the statutory and constitutional law, and the relevant circumstances by the standard of 'a reasonable official.' Thus the official's abnormal experience in law, or his subjective, below par, lack of expertise, makes no difference." *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 45 (1st Cir.1988). *See also Losch v. Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984) ("When a right is well established, ... 'no one who does not know about it can be called "reasonable" in contemplation of law.' ") (quoting *Goodwin v. Circuit Court,* 729 F.2d 541, 546 (8th Cir. 1984)).

■ "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should

be sustained." *Harlow,* 457 U.S. at 818–819, 102 S.Ct. at 2738. The burden of proof is on the defendant to show exceptional circumstances and it is not an easy burden to meet. *Arebaugh v. Dalton,* 730 F.2d 970, 972 (4th Cir.1984).

■ The first step, then, in deciding the qualified immunity issue is to establish the right that was violated. Although this case involves Rhode Island's body attachment law, the dispositive issue is not how clearly established the statutory law was, but how clearly established the plaintiff's rights were. *See Losch,* 736 F.2d at 909–910. The right that was violated was plaintiff's right to be free from an unlawful seizure of his body, that is, the right to be free from a body attachment absent a constitutionally mandated hearing before a judge.

Having established the "right," I must next determine whether that right was clearly established. The law regarding body attachments was clear. R.I.G.L. § 9–25–15, as construed by the Rhode Island Supreme Court in *Landrigan v. McElroy,* 457 A.2d 1056 (R.I.1983), allows for a body attachment only after a full, noticed hearing before a judge. An attachment issued without notice and a hearing violates the seized person's constitutional rights. *Id.* Moreover, the standards governing unlawful seizures of persons are clearly established, *Hall,* 817 F.2d at 923, and were set forth in the South Kingstown police department's "Blue Book", as I have noted *supra.*

It must follow, therefore, that the defendants cannot argue that the law on unlawful arrests and body attachments was not clear or that plaintiff's rights were not violated. Defendants focus instead on whether a "reasonable officer" would have known that plaintiff's rights were being violated. There was testimony that neither Officer Petrarca nor Officer Choquette had ever assisted in a body attachment. Such subjective knowledge, however, is irrelevant.

The defendants' arguments to the contrary are not persuasive. Much of it is based on the supposition that the writ of attachment was facially valid. This is an incorrect supposition. According to Constable Kirk, the form used to execute a judgment against property, used in this case, and the form used to secure a body attachment are totally different. Even assuming, however, that a reasonable police officer should not be expected to know the different attachment forms, the writ involved in this case was signed only by a clerk and evidenced no authorization by a judge. Again assuming that body attachments are outside the sphere of knowledge of a reasonable police officer, a reasonable police officer would know that some type of judicial review was required before seizing plaintiff's person. The situation in this case was sufficiently similar to an arrest that defendants should have looked for the indicia of a lawful arrest—either probable cause that a crime was committed or a document indicating judicial authorization for the arrest. *See Dennis v. Warren,* 779 F.2d 245, 247 (5th Cir.1985) (no immunity when police officer arrested person based on civil summons because no probable cause that crime committed and no arrest warrant). Thus, even assuming that a reasonable officer would not know the proper form, the writ was facially invalid and the officers cannot rely on it as a basis for immunity.

I must next consider exceptional circumstances. Defendants have neither pled nor attempted to prove exceptional circumstances that would justify their failure to know the prevailing law. Kirk, as a constable familiar with the proper forms, cannot plead any special circumstances. Although I might be open to an argument that a reasonable police officer should not know the details of a little-used procedure such as body attachments, I find that defendant Choquette does not carry his burden of proof in this regard. The circumstances were too similar to arrests and all reasonable police officers are charged with knowledge of lawful arrests. I therefore hold that he should have known that he was violating the plaintiff's rights.

■ Petrarca, however, presents a different situation. In looking at the totality

of circumstances, he acted reasonably. When confronted with a document that he did not recognize and a situation he had never dealt with, he called in his superior. His superior, Officer Choquette, then assured him it was proper for them to assist Constable Kirk. Although in a situation more familiar to a police officer, I would not accept a defense based on authorization from a superior, I feel that, in this case, Officer Petrarca acted reasonably. *See Coleman v. Frantz*, 754 F.2d 719, 731 (7th Cir.1985) (look at how officer acted under the circumstances).[1]

■ Based on his response to the circumstances, Officer Choquette is not entitled to the same immunity. As with Petrarca, he had reason to know that the body attachment was not a lawful, judicially authorized seizure. Unlike Petrarca, however, he did not seek guidance. Instead he proceeded with the attachment after merely looking over the facially invalid document. He fell far short of the standards I have explained. Choquette received no indication of proper authorization and thus did not act reasonably in offering assistance to Constable Kirk.

### Conclusion

Defendant Kirk's and defendant Choquette's motions for a judgment notwithstanding the verdict or for a new trial are denied.

Defendant Petrarca is entitled to qualified immunity and a judgment notwithstanding the verdict is hereby entered in his favor.

SO ORDERED.

---

[1] The jury also seemed to feel that Officer Petrarca was less culpable. It awarded punitive damages of $9,000.00 against Kirk and $1,000.00 against Choquette, but none against Petrarca.