Steven WHITING, Plaintiff, Appellee,

v.

George I. KIRK, Jr., et al.,
Defendants, Appellees.

Robert S. Choquette, Defendant,
Appellant.

Steven WHITING, Plaintiff, Appellee,

v.

George I. KIRK, Jr., Defendant,
Appellant.

Nos. 91–1726, 91–1727.

United States Court of Appeals,
First Circuit.

March 30, 1992.

As Amended April 6, 1992.

Terrence G. Simpson, with whom Kelly, Kelleher, Reilly & Simpson, Providence, R.I., was on brief, for defendant, appellant Robert S. Choquette.

Nathaniel J. Nazareth, Jr., with whom Rogers & Nazareth, North Kingstown, R.I., was on brief, for defendant, appellant George I. Kirk, Jr.

Kevin M. Brill, with whom Corrente, Brill & Kusinitz, Providence, R.I., was on brief, for plaintiff, appellee Steven Whiting.

Before TORRUELLA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

TORRUELLA, Circuit Judge.

Appellee Steven Whiting filed a 42 U.S.C. § 1983 suit against appellants George I. Kirk Jr., a constable, Lieutenant Robert S. Choquette, a Town of South Kingstown Rhode Island police officer and non-appellants Officer Ernest J. Petrarca (Choquette's subordinate), the Town of South Kingstown and attorney George J. Bauerle, III, seeking damages stemming from an improper administration of a writ of execution which resulted in Whiting's two day incarceration. A jury trial was held and a verdict was returned for Whiting and against appellants and Petrarca, awarding compensatory and punitive damages.

Entering a judgment notwithstanding the verdict on qualified immunity grounds, 768 F.Supp. 26 (D.R.I.1991), the trial judge dismissed the verdict as to Petrarca. Kirk and Choquette appealed. We are to review the reasonableness of appellants' actions in causing Whiting's arrest. Because we believe that appellants' actions were objectively reasonable under the circumstances, we reverse and vacate the award for damages.

### FACTS

Appellee Whiting and his wife Katherine were tenants of property owned by Thomas and Theresa Canfield. Because of arrearages in rent which Whiting owed, the Canfields instituted a civil trespass and ejectment proceedings—effectively an eviction. The Whitings were evicted and a money judgment was entered against them in favor of the Canfields. Subsequent to Whit-

ing's unsuccessful appeal of the eviction and pursuant to the issuance of a writ of execution, the Whitings' personal vehicle was seized and sold by the Washington County Rhode Island Sheriff's Department in an attempt to satisfy the judgment. However, the proceeds from the sale of the vehicle were insufficient to satisfy the judgment.

The Canfields' attorney sought a second execution from the Rhode Island Superior Court. On November 24, 1987, Diane Seemann, clerk of the Superior Court for Washington County, prepared a second writ of execution simply by filling in the blanks of a pre-printed statutory form. Seemann, who was not familiar with the form, erroneously completed it, ordering in addition to the Whitings' property, the "tak[ing of] the bodies" or body attachment of Whiting and his wife.[1] The fully completed writ of execution, with Seemann's signature on the "Clerk['s]" signature line and the official seal of the State of Rhode Island embossed on the document was sent to the Canfields' attorney, who in turn forwarded it to Constable Kirk.

On Saturday, June 4, 1988, Kirk went to the Whitings' residence and served the execution. He called a tow truck to take the Whitings' vehicle. He also summoned a South Kingstown police officer to assure that the execution was carried out peacefully. Officer Petrarca was dispatched to the Whitings' residence. At some point, it was discovered that the execution ordered the arrest of the Whitings, should the property seized not satisfy the judgment.[2] Kirk determined that the vehicle would fall short in value of the amount needed in order to satisfy the Canfields' judgment, so he decided to arrest Mr. Whiting as man-

---

**1.** Under Rhode Island law, an execution commanding a body attachment or civil arrest can only be issued by order of a judge. R.I.Gen. Laws § 9–25–15 provides in part that "... no execution shall issue against the body of a defendant unless so ordered by a justice of the superior court or a justice of a district court...."

At trial, Seemann testified that although she had been employed in the clerk's office since

1968 and as chief clerk since 1987, this type of execution—one commanding the attachment of a body—was the first that she had prepared.

**2.** The writ read in pertinent part; "[a]nd for want of goods and chattels and real estate of the said defendant ... to satisfy and pay the same as aforesaid, we command you to take the bodies of the said defendant...."

dated by the writ of execution.[3] Having never performed a body attachment, Petrarca called the South Kingstown Police Station for assistance and advice. His superior Choquette arrived shortly thereafter and Mr. Whiting was arrested.

Kirk took Whiting to the Adult Correction Institute in Cranston, Rhode Island. Upon arrival at the institute, Whiting complained of illness, namely, that he was suffering from Lymes disease. Kirk took him to Rhode Island Hospital where he was treated and given medication. After returning from the hospital with Whiting, Kirk was informed that the correction institute no longer had available space to house Whiting. Therefore, Kirk transported Whiting to the state police barracks in Wickford, Rhode Island. At the barracks, Kirk discussed the situation with Lieutenant Weatherspoon of the Rhode Island State Police. Lieutenant Weatherspoon was concerned that he lacked authority to authorize holding Whiting in the barracks. Consequently, Lieutenant Weatherspoon unsuccessfully attempted to contact Chief Judge Giannini of the Rhode Island Superior Court. Lieutenant Weatherspoon then called Judge Calderone of the Rhode Island Superior Court who, at the time, was sitting in Washington County. Kirk explained his dilemma to Judge Calderone who, in turn, authorized Kirk to turn Whiting over to the custody of the Rhode Island State Police. Whiting remained incarcerated at Wickford until Monday morning when he was taken before Judge Calderone and released.

Whiting filed a § 1983 suit against South Kingstown, the Canfields' attorney, Choquette, Petrarca and Kirk. Attorney Bauerle was dismissed from the suit prior to trial. At the conclusion of the evidence the district court denied the defendants' motion for directed verdict on qualified immunity grounds and entered judgment in favor of Whiting and against Kirk, Choquette and Petrarca. The jury was left to determine the amount of damages and whether there was municipal liability. It found no liability on the part of the Town of South Kingstown, but awarded Whiting $500 for compensatory damages against Choquette, Petrarca and Kirk, plus $9,000 for punitive damages against Kirk and $1,000 for punitive damages against Choquette. All defendants filed motions for judgment notwithstanding the verdict. The district court, on qualified immunity grounds, granted the motion only as to Petrarca, dismissing the jury award in his case. Kirk and Choquette filed this appeal.

The sole question that we address on this appeal is whether appellants Kirk and Choquette are entitled to qualified immunity for claims which arose from the arrest of Mr. Whiting.

## STANDARD OF REVIEW

The determination whether or not a party is entitled to qualified immunity is a legal decision and it is reserved for the court. *Lewis v. Kendrick,* 944 F.2d 949, 953 (1st Cir.1991); *Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987). Accordingly, "[o]ur review of legal decisions is plenary." *Albert v. Maine Central Railroad Co.,* 905 F.2d 541, 543 (1st Cir.1990).

## DISCUSSION

A. *Qualified Immunity*

■ Generally, "government officials performing discretionary functions, ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, "whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on the '*objective legal reasonableness*' of the action, ... assessed in light of the legal rules that were 'clearly established' at the time it was taken,...."

**3.** Testimony at trial revealed that Constable Kirk decided not to arrest Mrs. Whiting because there were four children in the Whiting home.

*Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39) (emphasis added). "Under this standard, the reasonableness of the official conduct is not measured against the official's *actual* knowledge of constitutional standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of 'presumptive knowledge' of constitutional standards." *Floyd v. Farrell,* 765 F.2d 1, 4–5 (1st Cir.1985) (quoting *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736) (footnote omitted).

Starting from this basic foundation, our *de novo* review of the record, leads us to but one conclusion—that Constable Kirk and Lieutenant Choquette are entitled to qualified immunity, because their actions in arresting Mr. Whiting were objectively reasonable under the circumstances.

B. *The Writ of Execution*

▌ The district court found that the writ of execution was facially invalid. For the following reasons, we disagree.

Rhode Island General Laws 9–25–9 provides a statutory form to be used in issuing writs of possession from the Superior Court of Rhode Island. *See* Addendum Exhibit 1. The only requirement is that "[w]rits of possession issuing from the superior court shall be substantially" the same as the statutory form. R.I.Gen.Laws 9–25–9. The form clearly provides language for body attachments; i.e. "we command you to take the body of [ ]." There is no space left which would denote authorization of the writ by a judge; a signature space is provided only for the clerk. However, pursuant to R.I.Gen.Laws 9–25–15 body attachments are not to be issued "unless so ordered by a justice of the superior court or a justice of the district court...." It follows that a writ of execution, mandating a body attachment, which was procedurally properly issued—one authorized by a judge, as mandated by R.I.Gen.Laws 9–25–15—would on its face appear no different than one which was improperly issued—one issued without the authority of a judge.

The writ of execution issued in this case by Clerk Seemann was a form which tracks identically the verbiage of R.I.Gen.Laws 9–25–9. *See* Addendum Exhibit 1. There was no judicial order to include the body attachment language in the writ. However, being unfamiliar with the form, Seemann erroneously included the body attachment language when completing the form. She then signed the form in the proper "Clerk" signatory space and embossed the official seal of the State of Rhode Island on the document. Thus the writ of execution, although not issued in accordance with the proper procedures as mandated by Rhode Island law for body attachments, was facially identical to a writ which would have been so issued. We conclude that it is objectively reasonable for a police officer or a constable presented with this procedurally defective writ to decide that it is facially valid.

The district court acknowledged that much in a clarifying instruction to the jury: "They don't stamp the writ and say permission has been obtained by the court before you serve it. *If permission had been obtained by the court [to attach the body of Mr. Whiting] the writ would still be in the same form as it was in this case.*" (Tr. Vol. 2, p. 19) (emphasis added). However, the district court irreconcilably concluded in denying qualified immunity to appellants that the writ was facially invalid because it "was signed only by a clerk and evidenced no authorization by a judge" and "a reasonable police officer would know that some type of judicial review was required." *Whiting v. Kirk,* 768 F.Supp. 26, 29 (D.R.I. 1991). In addition the court believed that "defendants should have looked for the indicia of a lawful arrest ... or a document indicating judicial authorization for the arrest." *Id.* This conclusion is based in part on testimony which showed that, although both Whiting and Choquette had issued and executed body attachments before, they had never used or seen this particular form. The district court felt that this fact should have alerted appellants to the fact that something was improper.

252

When as here, an obscure yet facially valid writ is issued, appellants' past experiences are irrelevant. On the surface, the writ issued by Ms. Seemann comported with all statutory requirements, and was on its face valid; i.e. its procedural defects were in no way evident or detectable on the face of the document.

■ Having concluded that the writ of execution was facially valid, we narrow the focus of this appeal. Our inquiry is whether the actions of appellants Kirk and Choquette, in arresting Mr. Whiting pursuant to a facially valid writ of execution, satisfy the objective legal reasonableness test. A closer look at the events leading to this suit shows that they were.

The Clerk of the Superior Court completed, at the request of a licensed attorney of the State of Rhode Island, a statutory form for a writ of execution stemming from a deficiency judgment in an attempt to satisfy the balance of that judgment. Being unfamiliar with the form, the clerk erroneously included language calling for the body attachment of the debtors. The form on its face comported with all statutory requirements; it "substantially" tracked the language of R.I.Gen.Laws 9–25–9, it was signed in the appropriate space by the Clerk and it was embossed with the official seal of the State of Rhode Island. The writ was forwarded to the Canfields' attorney, who after reviewing it failed to notice any defects; i.e. the body attachment language. The Canfields' attorney sent the writ to Constable Kirk for issuance. Constable Kirk, Officer Petrarca and Lieutenant Choquette all reviewed the fully completed statutory form and noticed no defects. After the arrest was made, Constable Kirk spoke with Justice Calderone of the Rhode Island Superior Court, who would have been responsible for issuing a writ ordering the body attachment of Mr. Whiting. The specifics of the conversation are not in the record, but the record does reflect that Constable Kirk "explained to the judge that [Kirk] had attached the body of [Mr. Whiting]...." (Tr. Vol. 2, p. 67). This apparently did not raise any suspicion of Judge Calderone, who pursuant to the con-

versation with Kirk, authorized the incarceration of Mr. Whiting in the state police barracks. Under these facts, we hold that Constable Kirk and Lieutenant Choquette acted in an objectively reasonable manner.

Constables and police officers alike should "have a modicum of knowledge regarding the fundamental rights of citizens. However, in holding our law enforcement personnel to an objective standard of behavior, our judgment must be tempered with reason." *Saldaña v. Garza*, 684 F.2d 1159, 1165 (5th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). In this case, the officers had a facially valid warrant for Whiting's arrest in circumstances that, with judicial approval, apparently would have justified his detention. "If we are to measure official action against an objective standard, it must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing and the methodology of effecting its enforcement." *Id.* "The *Harlow* standard requires that we make an objective analysis of the reasonableness of conduct in light of the facts actually known to the officer and not consider the individual officer's subjective assessment of those facts." *Farrell*, 765 F.2d at 6.

In light of the foregoing, we cannot say that appellants acted unreasonably. Although we sympathize with Mr. Whiting's misfortunes, appellants cannot be held responsible. The doctrine of qualified immunity exists "to shield [public officials] from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 806, 102 S.Ct. at 2732. To hold otherwise, would impose an undue burden on public officials of a threat of liability for the faithful execution of their official duties. We hold that appellants were justified in relying on the facially valid writ alone; the corroborating events only further establish their entitlement to qualified immunity. *See also Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979) (an officer executing an arrest warrant is not required to investigate every claim of innocence); *Hamill v. Wright*, 870 F.2d

1032, 1036 (5th Cir.1989) (an officer is entitled to qualified immunity for an unlawful arrest procured pursuant to a facially valid warrant); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir.1986) ("police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages"); *Turner v. Raynes*, 611 F.2d 92, 93 (5th Cir.), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 129 (1980) ("It would be a strange and unworkable rule that required a sheriff, at his peril, to determine the ultimate legal validity of every warrant—regular on its face and issued by proper authority—before serving it.").

### CONCLUSION

Because we hold that the writ of execution was facially valid, and because Constable Kirk and Lieutenant Choquette acted objectively reasonably in executing an arrest pursuant to that writ, they are entitled to qualified immunity.

The decision of the district court is *reversed and the award for damages is vacated.*

### ADDENDUM
### EXHIBIT 1

9–25–9. **Form of superior court writs of possession.**—Writs of possession issuing from the superior court shall be substantially in the following form:

### THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.

SC.

To the sheriffs of our several counties or to their deputies, (SEAL) Greeting:

Whereas of by the consideration of the SUPERIOR COURT holden at did on the day of recover judgment for the possession of with the privileges and appurtenances thereto belonging against of who had unjustly withholden from the possession thereof, and also by the consideration of the same court recovered judgment against the said for the sum of costs of suit, as to us appears of record, whereof execution remains to be done: We command you, therefore, that without delay you cause the said to have possession of and in the said with the privileges and appurtenances thereunto belonging. We also command you that of the goods and chattels and real estate of the said , within your precinct, you cause to be levied and pay to the said the aforesaid sum of with 50 cents more for this writ, and thereof also to satisfy yourself for your own fees; [and for want of the goods and chattels and real estate of the said to be found in your precinct to satisfy and pay the same as aforesaid, we command you to take the body of the said and commit unto our correctional institution in your precinct, therein to be kept until pay the full sum above mentioned, with your fees, or until be discharged by the said or otherwise by order of law.]

Hereof fail not, and make true return of this writ and of your doings thereon to our superior court at on the day of A.D. .

Witness, the seal of our superior court at this day of in the year .

, Clerk.

254

EXHIBIT 2

## State of Rhode Island and Providence Plantations.

**Washington** ss.

To the Sheriffs of our several Counties, or to their Deputies,                    **GREETING :**

WHEREAS,

........Thomas..J...Canfield..and..Teresa..Canfield..................................................

..................................................................................................................................plaintiff..........

*Judgment recovered on the 16th day of April A.D. 19 87 in action of Trespass and Ejectment.*

by the consideration of the SUPERIOR COURT, holden at Washington within our County of Washington on the.............16th..............day of.........April.........................A. D. 19....87.

recovered judgment for the possession of a certain tenement to said plaintiff.....................belonging being

........................23..First..Street..................................................

..................Westerly,..Rhode..Island..................................

with the privileges and appurtenances thereto belonging, against........**Steven Whiting**.......

and.....Katherine..Whiting..................................................................................................

..........................................................................................................................defendant.....

**Dollars.** **Cents.**

who had unjustly withholden Thomas J. & Theresa from the possession thereof; and also by the consideration of the same Court, recovered judgment against the said defendant....Steven..Whiting..... Canfield

..and..Katherine..Whiting..for the sum of.....$1550.00..................dollars and............................

cents costs of suit, as to us appears of record: whereof execution remains to be done:

We command you, therefore, that without delay you cause the said plaintiff.....Thomas..J.....Canfield

.....and..Theresa..Canfield.........................to have possession of and in the said premises, with the

privileges and appurtenances thereunto belonging.

We also command you that of the goods and chattels and real estate of the said defendant

**Steven..Whiting..&..Katherine** Whiting within your precinct; you cause to be levied and paid to

the said plaintiff.Thomas..J...&..Theresa..Canfield.........the aforesaid sum of...$1323.50...........

.........................................................................: and therefore also to satisfy yourself for your own fees.

And for want of the goods and chattels and real estate of the said defendant......Steven..Whiting.....

.....and..Katherine..Whiting....................to be found in your precinct, to satisfy and pay the same

as aforesaid, we command you to take the bodies of the said defendant.......**Steven Whiting**..........

and Katherine Whiting.....................and..They..................commit unto our county jail in

your precinct, therein to be kept until....they.................pay the full sum above mentioned, with your fees,

or until..........they........be discharged by the said plaintiff.............................or otherwise by order of law.

Hereof fail not, and make true return of this writ, and of your doings thereon, to our Superior Court,

at Washington, for our Counties of Washington content, on the...........24th..................

day of.........November...........................................A. D. 19..88...

Witness, the Seal of our Superior Court, at Providence, this........24th..............................day of

.....November.....................................In the year 19...87.

..............................................................................**CLERK.**

BOWNES, Senior Circuit Judge, dissenting.

My brethren use the cloak of qualified immunity to protect two state officials who blindly and without questioning their authority to do so jailed the plaintiff, who had neither committed a crime nor was suspected of one. The rationale for this deprivation of plaintiff's freedom was that it was objectively reasonable for the defendants to follow the command of a writ—a piece of paper—that was incorrectly made out. I do not think that blind obedience to a writ is objectively reasonable especially where the actors are law enforcement officials who must be presumed to have some knowledge of the Constitution.

My objection to the majority's conclusion does not turn on whether the writ was or was not facially valid. For the reasons that follow I am of the opinion that the actions of the constable and police lieutenant were not objectively reasonable.

It must be recognized, at the outset, that "body" attachments for the payment of a civil debt are rare today; they are vestiges of days long gone by. Parts of the majority opinion read as if the use of body attachments was standard practice in Rhode Island. Although the writ may have been facially valid, as the majority finds, it is clear that it commanded that the plaintiff *and* his wife be jailed because they owed their landlord money for rent not paid. But neither the drastic action called for in the writ, nor the uniqueness of the process resulted in any meaningful inquiry by either of the defendants.

Constable Kirk, who had some experience with writs and executions, testified that the form of the writ was not the usual form used for a body attachment. Despite this, he requested assistance of the town police in arresting plaintiff. Officer Petrarca, who arrived to assist Kirk, was the only one worried enough about what was going on to ask for advice. He called his superior, defendant Lieutenant Choquette. Choquette examined the writ and then, without more, he, Kirk and Petrarca, forcibly arrested the plaintiff and incarcerated him for two days.

An objectively reasonable constable who knew, as defendant Kirk did, that the form of the writ was not the type used for body attachments would have inquired from the lawyer who obtained the writ and/or the official who issued it whether it was intended that the plaintiff and his wife be arrested. Kirk, at least had the good sense not to arrest plaintiff's wife because that would have left their children alone in the house. He also should have had the good sense to inquire whether the attorney who obtained the writ wanted the plaintiff jailed for the weekend.

Defendant police Lieutenant Choquette made no inquiry on his own at all. It can be fairly assumed that he knew, at least, the basic requirements for making an arrest on criminal process. I think that an objectively reasonable police officer would have questioned a lawyer or judge about arresting the plaintiff on civil process. There is nothing in the record showing that Kirk discussed the form of the writ with Justice Calderone. His inquiry of the Justice was directed to *where* the plaintiff should be incarcerated, not *whether* he should be incarcerated. Based on the record, it can only be concluded that neither defendant made any reasonable inquiry as to whether it would be lawful for them to put the plaintiff in jail.

Finally I note that if this arrest had taken place on a weekday, the plaintiff would not have been incarcerated at all. He would have been taken before a justice of the Rhode Island Superior Court and released, as he was on the Monday morning following his weekend in jail. I think that reasonably objective law enforcement officers would have waited until Monday before making the arrest.

I respectfully dissent for the reasons stated and on the basis of the excellent opinion by the district court.