Robert L. HOFFMAN, Plaintiff, Appellant,

v.

Luigi A. REALI, Defendant, Appellee.

No. 91–1703.

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1991.

Decided Aug. 27, 1992.

Arthur E. Chatfield, III, Providence, R.I., for plaintiff, appellant.

Robin E. Feder, Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., Providence, R.I., was on brief, for defendant, appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Robert L. Hoffman, a former corrections officer at a Rhode Island prison, sued Luigi A. Reali, a Rhode Island state police officer, in the United States District Court for the District of Rhode Island under the provisions of 42 U.S.C. § 1983. He complained that Reali had obtained a warrant for his arrest, and caused him to be arrested, without probable cause, in violation of the United States and Rhode Island constitutions, and state law. The district court granted Reali's motion for summary judgment, holding that he was protected by qualified immunity. Finding no reversible error, we affirm.

## I. *Background*

Hoffman was employed by the State of Rhode Island as a correctional officer at the Adult Correctional Institution (ACI) in Cranston, Rhode Island. On July 5, 1986, he was injured when assaulted by an inmate and became disabled. He was out of work and received workers' compensation through August 31, 1987.

Roughly two months after the assault upon Hoffman, on September 4, 1986, when

Hoffman was no longer working there, a convicted murderer, James Silvia, escaped from ACI. The Rhode Island State Police began an investigation, and came to suspect Hoffman of aiding and abetting Silvia's escape. Almost two years later, on June 2, 1988, Reali sought a warrant for Hoffman's arrest from Chief Judge Albert DeRobbio of the Rhode Island state district court. In applying for the warrant, Reali tendered his own affidavit which stated in relevant part,

. . . . .

Since June of 1987 your affiant [Reali] has been conducting an extensive investigation regarding the criminal activities of one particular criminal entity. As a result of this investigation your affiant has developed a number of informants who for the purposes of this affidavit will remain unnamed. These informants however have been placed in R.I. State Police custody either by their own volition or by an act of their own volition and pursuant to court order. Each of these informants referred to in this affidavit have indicated that they will testify in court or in any other legal proceeding which requires their testimony. As a result of de-briefing sessions with three of the aforementioned informants information and statements have been obtained regarding the escape of inmate James Silvia from Supermax/A.C.I. which took place on September 4th, 1986.

Statements taken from the aforementioned informants/witnesses by your affiant and other members of the R.I. State Police Intelligence Unit directly link co-rectinal [sic] officer Robert L. Hoffman, DOB: 11/8/45 of 43 New Britain Drive, Warwick, R.I. as aiding and abetting and assisting in the escape of inmate James Silvia on Sept. 4th, 1986. Correctional officer Robert L. Hoffman while dressed in his uniform picked up and later delivered several hacksaw blades and cold chisels which were later used by Silvia to make good his escape from Supermax on Sept. 4, 1986.

* Of the Eastern District of Pennsylvania, sitting by designation.

In a statement taken from one of the aforementioned informants/witnesses Hoffman's payment for conveying the hacksaw blades and cold chisels into the A.C.I. was ½ gram of cocaine which was placed in the same bag containing the above items and later given to Hoffman by said informants/witness. Your affiant informant/witness has positively identified Hoffman from a photo line-up as being the same individual who received said hacksaw blades and cold chisels from her/him which were later smuggled into the High Security Center (Supermax) of the A.C.I. Evidence obtained at the scene of the escape on 9/4/86 was consistent with the use of hacksaw blades and/or chisels being used to make good the escape.

Accordingly your affiant requests that arrest warrant/s issue for Robert L. Hoffman ...

Based upon the above, Judge DeRobbio issued the warrant for Hoffman's arrest. The next day, Hoffman was arrested, booked, and detained for several hours. Subsequently, he was charged with four felony counts, namely, accessory before the fact in violation of R.I.G.L. 11–1–3; conspiracy to aid and abet the escape of an inmate in violation of R.I.G.L. 11–1–6; acceptance of a bribe by a public official in violation of R.I.G.L. 11–7–3 and conveyance of instruments for escape in violation of R.I.G.L. 11–25–8. The Rhode Island attorney general, thereafter, declined to prosecute for lack of corroborating evidence, and the charges were thrown out by a Rhode Island judge on July 14, 1988.

On April 6, 1990, Hoffman brought the present federal action alleging deprivation of rights, privileges and immunities secured to him by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 2, 3, 8, 10, 14, and 21 of the Constitution of the State of Rhode Island. He invoked jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §§ 1983, 1985 and 1988; and pendent and ancillary jurisdiction of the federal court over the state claims. Named defendants were Luigi A. Reali, individually and in his capacity as a state police officer; Walter E. Stone, individually and in his capacity as Superintendent of the Rhode Island State Police; John Does 1–10, individually and in their capacity as Rhode Island state police officers; and the state of Rhode Island.

On September 11, 1990, Hoffman voluntarily dismissed the complaint against Stone in his individual capacity. On January 24, 1991, after a hearing, the district court dismissed all claims against the state of Rhode Island, and against Stone and Reali in their official capacities. The district court also dismissed various other counts. What remained were claims against Reali individually under 42 U.S.C. § 1983 for alleged violations of Hoffman's Fourth Amendment rights, and state law claims of false arrest, malicious prosecution, and infliction of emotional distress.

In the meantime, the parties had engaged in discovery. Hoffman sought production of state police records and to depose the police informants mentioned in Reali's affidavit. In addition, Hoffman sought to compel Reali to answer several questions he had asked during his deposition concerning the identity of the police informants and the contents of their statements. Reali was instructed by his attorney not to answer any questions which might identify the informants. Reali, in turn, filed motions for protective orders allowing him to produce documents or answer deposition questions that would not disclose the identities of the police informants. The district court did not rule on these motions prior to granting of summary judgment. However, at the hearing to consider defendant's motion to dismiss on January 24, 1991, the district court requested defendants to produce for *in camera* inspection all the documents which defendants contended identified the informants.[1] Also on that day, Hoffman filed a motion to compel deposition answers from

---

1. While these were apparently delivered to the court, the docket and record do not indicate they were ever examined by the judge.

Reali. The district court granted this motion for Reali's failure to timely object. Believing he had objected, Reali moved to vacate the order compelling deposition answers. The district court did not rule on this motion prior to its grant of summary judgment. Discovery was closed as of January 31, 1991.

On January 31, 1991, Reali moved for summary judgment on the § 1983 claim, accompanying his motion with the same affidavit he had submitted to the state judge to obtain the arrest warrant. In addition, he submitted two other affidavits. An affidavit from Detective John M. LaCross confirmed that LaCross and others in the Rhode Island State Police Intelligence Unit had been investigating Hoffman's connection with Silvia's escape, and that they had taken statements from informant witnesses implicating Hoffman in the escape. LaCross identified these statements "as the basis of the probable cause used which subsequently led" to Hoffman's arrest. LaCross also stated that these "informants/witnesses have provided other information and statements pertaining to various crimes, some of which have been disposed of with the convictions of various people along with other criminal cases presently being investigated...."

The movant's remaining affidavit was from the Chief of the Criminal Division for the Department of the Attorney General for the State of Rhode Island, James W. Ryan. Ryan swore to having reviewed Hoffman's arrest file and the informants' statements referred to in Reali's affidavit. Ryan declared that these witnesses "have provided information relating to other crimes which ultimately led to several arrests and guilty pleas." He opined that there existed probable cause to arrest Hoffman for participating in Silvia's escape and that "it was reasonable for Detective Reali or any other law enforcement officer to believe there existed probable cause to arrest Mr. Hoffman." Ryan asserted, however, that his office "chose not to seek an indictment due to lack of corroborating evidence."

Hoffman submitted an objection to Reali's motion for summary judgment on February 19, 1991 but offered no affidavits, depositions or other materials in support of his objection. Hoffman also failed to submit a statement of disputed facts as required by Local Rule 12.1. Several weeks later, on March 11, 1991, Hoffman filed a motion to correct typographical errors, a revised memorandum of law, and his own affidavit in support of his objection to Reali's motion for summary judgment. Hoffman's affidavit was accompanied by copies of newspaper articles in which Rhode Island Attorney General James O'Neil was quoted as declining to prosecute Hoffman and various others who were accused by four persons named in the articles as informants. O'Neil said there was insufficient independent corroboration of these informants, three of whom had extensive criminal records. The articles described a dispute between O'Neil and the state police over the former's purported unwillingness to prosecute. The four informants were three imprisoned felons identified by name in the articles, and a former ACI guard, also named.

Upon consideration of the parties' motions, the district court determined that no genuine issues of material fact existed and that Reali's qualified immunity clearly provided the legal basis for granting summary judgment in his favor. It is from this grant of summary judgment that Hoffman now appeals.

## II.  *Standard of Review*

Our review of a district court's grant of summary judgment is plenary. *See Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). Summary judgment is only appropriate when the pleadings and other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir.1991). The party opposing a motion for summary judgment must establish the existence of a genuine issue for trial by setting forth specific facts

which, if established at trial as true, would entitle him to prevail on his claim. He may not rely on mere allegations to defeat such motion. *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985).

■ Absent dispute over essential underlying facts, a defendant's entitlement to qualified immunity is a question of law and is reserved for the court. *Whiting v. Kirk*, 960 F.2d 248, 251 (1st Cir.1992) (citing *Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir. 1991); *Hall v. Ochs*, 817 F.2d 920, 924 (1st Cir.1987)). Thus, our review is plenary. *Albert v. Maine Central Railroad Co.*, 905 F.2d 541, 543 (1st Cir.1990).

Hoffman's theory in his § 1983 action was that Reali violated his rights under the Fourth Amendment because he submitted an affidavit to obtain a warrant for his arrest without probable cause. According to Hoffman, the information contained in Reali's affidavit lacked probable cause because it was not corroborated by additional, independent evidence and it failed to mention when the informants made their statements or when Hoffman conveyed the blades in exchange for cocaine. Hoffman also argues that there had been no demonstrated prior use of the informants and that their reliability and credibility was suspect because of their criminal backgrounds and motives to curry favor.

■ An arrest warrant complies with the Fourth Amendment if, under the totality of circumstances, there is probable cause to believe the suspect committed the offense. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In *Gates*, the Court abandoned the strict requirements in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), focusing on proof of an informant's veracity or, alternatively, his reliability, favoring instead a "totality-of-the-circumstances" approach. 462 U.S. at 230–31, 103 S.Ct. at 2328–29. Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person to conclude that an offense has been committed by the person arrested.

*United States v. Cruz Jiménez*, 894 F.2d 1, 4–5 (1st Cir.1990). In reviewing a trial court's determination of probable cause, our duty is simply to ensure that the judge had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. The issue in this case, moreover, is not whether Reali *in fact* had probable cause but whether his conclusion to that effect was sufficiently reasonable to afford him the protection of qualified immunity.

### III. *Qualified Immunity*

■ The general rule of qualified immunity, as set out by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 812, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982), is that:

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*See also Mitchell v. Forsyth*, 472 U.S. 511, 517, 105 S.Ct. 2806, 2811, 86 L.Ed.2d 411 (1985). This doctrine "... is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery, because qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell* 472 U.S. at 526, 105 S.Ct. at 2815; *Harlow* 457 U.S. at 817, 102 S.Ct. at 2737. Under the standard enunciated in *Harlow*, an "allegation of malice is not sufficient to defeat [qualified] immunity if the defendant acted in an *objectively reasonable* manner." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (emphasis added).

■ Applying this standard we have held that it is "objectively reasonable" for

a police officer to seek an arrest warrant so long as the presence of probable cause is at least arguable. *Floyd v. Farrell,* 765 F.2d at 5. In securing an arrest warrant, a police officer will not be immune if, on an objective basis, "it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue[,] immunity should be recognized." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Under *Harlow*'s objective test, the question a court must ask is whether another officer, standing in Reali's shoes and having the same information Reali had, might reasonably have come to the conclusion that he had probable cause to apply for the arrest warrant. *See e.g., Malley v. Briggs,* 475 U.S. at 345, 106 S.Ct. at 1098; *Floyd v. Farrell,* 765 F.2d at 5.

■ In his affidavit Reali stated that three informants, who had provided other reliable information, had indicated that Hoffman conveyed tools to an inmate which he later used to escape in exchange for cocaine. A state chief judge examined the affidavit and issued an arrest warrant reflecting his own determination that the information therein afforded probable cause to believe that Hoffman had aided and abetted Silvia's escape, as stated. Although judicial approval of a warrant does not serve as an absolute bar to the § 1983 liability of the officer who obtained the warrant, *see Briggs v. Malley,* 748 F.2d 715, 721 (1st Cir.1984), *affirmed* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), deference must be given to a judge's determination of probable cause if there is substantial basis for the finding. *United States v. Cruz Jiménez,* 894 F.2d at 4; *see also Illinois v. Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

■ Hoffman argues that Reali acted unreasonably by relying on the uncorroborated statements of prisoners. He points to the Rhode Island attorney general's unwillingness to prosecute because of the lack of independent corroboration. A probable cause finding, however, does not require as high a quantum of proof as evidence which would justify condemnation.

*Illinois v. Gates,* 462 U.S. at 235, 103 S.Ct. at 2330. "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause," *id.,* quoting *Spinelli,* 393 U.S. at 419, 89 S.Ct. at 590. In Rhode Island, uncorroborated accomplice testimony is sufficient to sustain a conviction. *State v. DeMasi,* 413 A.2d 99, 100 (R.I.1980); *State v. Pella,* 101 R.I. 62, 220 A.2d 226, 231 (1966). Given the specific information set out in the affidavit from informants who were in a position to know, we cannot say that no reasonable police officer would have thought there was probable cause here.

■ Hoffman contends that the district court erred in allowing summary judgment without granting him an opportunity to discover the informants' identities and read their statements. According to Hoffman, without such discovery he lacked the ability to supply a competent opposing affidavit.

■ This argument might have merit if the record suggested a credible basis to doubt that the informants mentioned in the affidavit actually existed, or that they had actually advised Reali of Hoffman's purported criminal participation in Silvia's escape, as represented in the affidavit. For a police officer to fabricate an affidavit would obviously raise an issue of utmost gravity. But no such issue has been raised here. Not only were the matters sworn to in the affidavit supported by the uncontested affidavits of LaCross and James Ryan, the affidavit was supported in large measure by the newspaper clippings Hoffman himself submitted. These clippings reported that certain named individuals had informed against Hoffman regarding Silvia's escape. While the ultimate truth of the informants' story remains an open question, the existence of the informants and the fact of their having informed against Hoffman are not in serious contention. To be sure, Hoffman has insinuated in argument that the informants possibly did not exist or that Reali may have fabricated their information, but no coherent or supported argument to this effect was developed either at trial or on appeal. Matters not made the subject of argument are not

issues on appeal. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

Had Hoffman been given access to the informant's original statements, he might, to be sure, have been able to find weaknesses in them. By the same token, had he been able to interrogate the police about the informants, he might conceivably have been able to show that they had not been proven reliable in other cases. It might well have been prudent had the district court actually reviewed, *in camera*, the confidential informants' files which were delivered to it by the Rhode Island state police, in order to satisfy itself that there were no serious discrepancies between the informants' statements and the representations contained in the affidavit. Nonetheless, on this record, we find no abuse of discretion by the district court in proceeding as it did.

"[A] plaintiff's entitlement to discovery before a ruling on summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989). In opposing Reali's supported motion for summary judgment, Hoffman offered nothing more than bare-bone allegations of lack of probable cause for his arrest, with no additional facts to support his allegations. That he had not received complete production from Reali does not change his burden of making some showing that discovery was likely to produce probative evidence in his behalf. *Taylor v. Gallagher*, 737 F.2d 134, 137 (1st Cir.1984). Hoffman may not rest merely on a bare hope that discovery will provide evidence to create an issue of fact. "Discovery is not a 'fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed." *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir.1988).

Reali's position is strengthened by the "informant's privilege" under which the state is normally entitled to refuse to disclose the identity of a person who has furnished information relating to an investigation of a possible violation of law. *See* J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 510 at 510-1 (1991); 8 Wigmore, *Evidence* § 2374(f) at 761 (McNaughton rev. 1961).

In a *criminal* prosecution, the privilege must yield where "the disclosure of an informer's identity ... is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Supreme Court has not held, however, that the government must disclose the informant's identity at a preliminary hearing to determine cause for an arrest or search, *United States v. Jackson*, 918 F.2d 236, 240 (1st Cir.1990) (citing *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980)) or at a suppression hearing. *McCray v. Illinois*, 386 U.S. 300, 312, 87 S.Ct. 1056, 1063, 18 L.Ed.2d 62 (1967). The Sixth Circuit has said that although the *Roviaro* balancing standard probably applies in civil actions, "consideration of the circumstances involved in civil litigation will usually mean that the privilege is less likely to give way in a civil action." *Holman v. Cayce* 873 F.2d 944, 946 (6th Cir.1989). 8 Wright & Miller, *Federal Practice and Procedure; Civil* § 2019 at 156-7 (1970). Where as here the privilege was raised in a civil action, it was Hoffman's burden to establish a clear need and relevance before he could force the state, over its objection, to reveal the informers' identities and further particulars as to the information they had provided. He failed to show the degree of necessity and urgency required.

## IV.  *Conclusion*

Essentially for the same reasons set forth in the district court, we conclude that Reali's conduct was objectively reasonable and that he was protected by qualified immunity.

*The judgment of the district court is affirmed. Costs to appellees.*