D'Amour v. Burke                        CV-96-194-JD  09/11/96
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Michael A. D'Amour

        v.                              Civil No. 96-194-JD

William Burke, et al.


                              O R D E R


        The plaintiff, Michael D'Amour, brought this action under 42

U.S.C. § 1983 and various state law theories, seeking damages

related to his detention prior to and during trial for a crime he

did not commit.  Before the court is the motion for summary

judgment of defendants Tucker, Burke, and the city of Portsmouth

(document no. 29).


                            Background[1]

        On April 13, 1991, a robbery took place at the Demoulas

Market Basket supermarket in Portsmouth, New Hampshire.

Witnesses to the robbery informed the police that two

individuals, one of whom was wearing a band-aid across his nose

and the other a blue jacket, had committed the robbery.

Witnesses also identified the plaintiff as the person holding the

gun during the robbery and claimed that they had seen the

_____

        [1]The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiff.

plaintiff searching through the trash at the shopping mall in which the supermarket is located on the night after the robbery. Subsequent investigation of the plaintiff revealed that the plaintiff had asked an acquaintance for a band-aid on the evening of the robbery and that the person the plaintiff was with on the night of the robbery was wearing a blue windbreaker at the time.

On April 21, 1991, the plaintiff was charged with armed robbery and with being a felon in possession of a firearm, and a probable cause hearing was held in Portsmouth District Court. Probable cause was found and the matter was presented to the grand jury, which returned an indictment against the plaintiff. The plaintiff was detained initially at the Rockingham County House of Correction pending trial. On July 29, 1991, the plaintiff was found, based on his alleged involvement in the Demoulas robbery, to have violated his probation on another charge and was placed in the New Hampshire State Prison.

In preparation for trial, the plaintiff, through counsel, requested all exculpatory evidence in the state's possession. At some point prior to trial plaintiff's counsel became aware that on two different occasions one of the eyewitnesses to the robbery, Kimberly Schultz, had been unable to identify the plaintiff in a photographic lineup. Prior to trial, counsel moved to exclude as unduly suggestive any testimony by Schultz

2

identifying the plaintiff as one of the robbers. The motion was denied. Trial commenced at some point in December 1991 and ended in a mistrial on December 18, following which the plaintiff was transported to the Rockingham County House of Correction.

Shortly after the mistrial was declared, the Portsmouth police department received a call from agent Sean Rafferty of the Portsmouth office of the Federal Bureau of Investigation. Rafferty informed defendant James Tucker, a Portsmouth police department detective who had been assigned to the case, that the robbery "may have been committed by a gang from the Charlestown, Massachusetts area known as the Flynn gang," Affidavit of James Tucker ¶ 14, of which the plaintiff was not a member. Tucker told Rafferty to contact Brian Kenyon, the assistant county attorney from Rockingham County who was prosecuting the case. On December 20, 1991, Tucker and Kenyon were informed by two state police officers that the state police "were working with the [FBI] in investigating a gang who had been committing armed robberies with a similar method" as that employed in the robbery for which the plaintiff had been charged. Id. ¶ 16. After hearing this information, Kenyon stated that he would arrange to have the plaintiff released on his own recognizance but that he would not drop the charges against the plaintiff until federal authorities charged someone else with the robbery. The plaintiff

3

was released the following day but was not informed of the information that the federal and state authorities had gained through their investigation.

On February 5, 1992, Sergeant Francis Breen of the New Hampshire State Police informed Tucker that Kimberly Schultz, the eyewitness to the DeMoulas robbery who had been unable to identify the plaintiff as the gunman, had identified a Richard Ferguson as the gunman in the robbery. The plaintiff was not made aware of this information.

On April 16, 1992, federal authorities charged Richard Ferguson and Charles Flynn with the Demoulas robbery. Ferguson later plead guilty to certain charges and Flynn was found guilty of the Demoulas robbery. Charges against the plaintiff were dropped on April 21, 1992.

The plaintiff commenced the instant action on April 14, 1995. In his first amended complaint, he alleges that the individual defendants and the municipal and county defendants violated and conspired to violate the plaintiff's right to be free from unreasonable searches and seizures by charging him and allowing him to remain charged without a continuing reasonable basis to believe that he had committed a crime; violated and conspired to violate the plaintiff's right to due process by failing to disclose exculpatory evidence to the plaintiff; and

4

committed the torts of abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994).  The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's

5

favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)), <u>cert. denied</u>, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.  <u>Defendant Tucker</u>

Defendant Tucker seeks summary judgment on the plaintiff's claims arising under 42 U.S.C. § 1983 on the ground of qualified immunity. The plaintiff claims that qualified immunity is not available to Tucker because a reasonable person possessing the facts available to Tucker would have known that (1) there was no continuing basis for believing probable cause existed to arrest and detain the plaintiff; and (2) the plaintiff was entitled to disclosure of exculpatory evidence.

To the extent the plaintiff seeks relief for Tucker's role in arresting the plaintiff, Tucker is entitled not only to summary judgment based on qualified immunity for his actions, but also to summary judgment based on the merits of the plaintiff's §

6

1983 claim. "Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person to conclude that an offense has been committed by the person arrested." Hoffman v. Reali, 973 F.2d 980, 985 (1st Cir. 1992); Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985). Here, the undisputed record indicates that several witnesses had identified the plaintiff as the gunman in the robbery and claimed that they had seen the plaintiff engaging in suspicious activity near the site of the robbery on the night after the robbery. In addition, the evidence gathered through subsequent investigation of the plaintiff -- including his request for a band-aid and his presence on the night in question with a companion wearing a blue windbreaker -- corroborated the witnesses' testimony. The court finds that a reasonably prudent person in Tucker's position could have concluded that the plaintiff had committed a crime and rules that Tucker had probable cause to arrest the plaintiff.

To the extent that the plaintiff seeks relief against Tucker because the charges against him remained pending following the receipt of exculpatory evidence, the court finds that his claim is without merit. The plaintiff has offered, and the court has found, no authority for the proposition that, under New Hampshire law, anyone other than the prosecutor has the authority to drop

7

charges against a defendant after a grand jury has returned an indictment.

As to the plaintiff's claims concerning disclosure of exculpatory evidence, the court notes that "there is no independent duty of a police officer or investigative officer to disclose exculpatory evidence to a [criminal] defendant." Campbell v. Maine, 632 F. Supp. 111, 121 (D. Me. 1985), aff'd, 787 F.2d 776 (1st Cir. 1986). Thus, "the failure to reveal such information to the plaintiff in this case does not amount to a constitutional violation." Id. Although a police officer in possession of exculpatory evidence has a duty under Brady v. Maryland, 373 U.S. 83 (1963) to turn that evidence over to the prosecutor, Campbell, 632 F. Supp. at 121, it is undisputed that, upon being notified of potentially exculpatory information by the FBI following the declaration of a mistrial, Tucker directed the FBI to Brian Kenyon, the prosecutor in charge of the case. Further, the record indicates that Schultz's identification of Richard Ferguson occurred as part of an investigation in which Tucker was not involved and of which Kenyon was aware. Under these circumstances, the court finds that Tucker had no personal obligation to pass along the information to Kenyon.[2]

---

[2]At a minimum, Tucker's duty under Brady to pass along information concerning the identification was not, under the circumstances of this case, a clearly established obligation of

8

The court grants summary judgment to defendant Tucker on the plaintiff's § 1983 claims.

II.  Defendant Burke

Since it is undisputed that defendant Burke's involvement in the instant action stems solely from his role as chief of the Portsmouth Police Department, the court interprets the plaintiff's claim as an action for supervisory liability under § 1983.

To establish supervisory liability for the acts of a subordinate, a plaintiff must show that the supervisor's conduct "amounted to a reckless or callous indifference to the constitutional rights of others" and must demonstrate "an 'affirmative link' between the street-level misconduct and the action, or inaction, of government officials." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Raineri v. Hillsborough County Dep't of Corrections, No. 93-118-JD, slip op. at 16 (D.N.H. Jan. 9, 1996).  Supervisory liability attaches "'only if it would be manifest to any reasonable

_____

which a reasonable person would have been aware.  As such, Tucker is entitled to qualified immunity for his conduct with respect to this information.  See St. Hiliare v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995) (defendant entitled to qualified immunity unless contours of right alleged are sufficiently clear so that a reasonable official would understand what he is doing violates that right), cert. denied, 116 S. Ct. 2548 (1996).

9

official that his conduct was very likely to violate an individual's constitutional rights,'" Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir.) (quoting Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994)), cert. denied, 116 S. Ct. 675 (1995), and the supervisor's actions "led inexorably to the constitutional violation," id.

As noted supra, the plaintiff has failed to establish that Tucker, or any of the employees that Burke supervised, committed a constitutional violation. Moreover, the record indicates that Burke had no involvement in the investigation of the plaintiff. It follows that Burke's conduct could not have "led inexorably" to a constitutional violation. The court grants summary judgment to defendant Burke on the plaintiff's § 1983 claims.

III. Municipal Liability Against the City of Portsmouth

A municipality can be liable under 42 U.S.C. § 1983 for a constitutional violation only if its policies or customs cause the deprivation of a federally protected right. Monell v. Department of Social Servs., 436 U.S. 658, 694-95 (1978); see also Rubin v. Smith, 919 F.2d 534, 542 (D.N.H. 1996) (municipal liability cannot attach absent deprivation of constitutionally protected right). Flagrant deficiencies in the hiring, training, supervision, and discipline of police officers can constitute

10

municipal policy, and thus serve as the basis for § 1983 liability, if those responsible for making policy for the police department are deliberately indifferent to these deficiencies. Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir.), cert. denied, 493 U.S. 820 (1989).

The plaintiff's claim against the city of Portsmouth is founded on his assertion that the city's failure to train or supervise its employees constituted a policy or custom that caused the deprivation of his rights under the Fourth and Fourteenth Amendments. However, the plaintiff's failure to establish that city employees deprived him of a federally protected right belies his assertion that a city policy or custom caused this deprivation. In addition, the plaintiff has adduced no evidence that policymaking by any city officials amounted to deliberate indifference to the alleged deficiencies in the city's training or supervision of its law enforcement agents. The court grants summary judgment to the city of Portsmouth on the plaintiff's § 1983 claim.

IV. Conspiracy to Violate Civil Rights

In count VIII of his amended complaint, the plaintiff alleges that the defendants "engaged in a conspiratorial agreement, the essential nature of which was known to each, to

11

deprive the Plaintiff of his civil rights and/or to conceal a violation of those rights" in violation of 42 U.S.C. § 1983.

"[F]or a conspiracy to be actionable under section 1983 the plaintiff has to prove that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and its laws.'" Earle v. Benoit, 850 F.2d 836 (1st Cir. 1988) (quoting Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980) (alteration in original)). The court has found, supra, that neither Burke, Tucker, nor the city of Portsmouth deprived the plaintiff of a federally protected right. Thus, to the extent that the plaintiff alleges a conspiracy solely among these three defendants, summary judgment is warranted.

To the extent the plaintiff alleges a conspiracy between defendants Burke, Tucker, and the city of Portsmouth, and defendant Rockingham County, this claim is without merit. Although a municipality may be liable under § 1983 for its policies or customs, Monell, 436 U.S. at 694-95; see Stone v. Holtzberger, 807 F. Supp. 1325, 1349 (S.D. Ohio 1992) (municipality can be liable for conspiracy where municipal policymaker agrees with individuals to violate constitutional rights), aff'd, 23 F.3d 408 (6th Cir. 1994), the plaintiff has

12

failed even to allege that a Rockingham County policymaker conspired with Burke or Tucker. Therefore, the plaintiff is unable to prove a conspiracy among these defendants.

The court grants summary judgment to defendants Burke, Tucker, and the city of Portsmouth on the plaintiff's conspiracy claim. Based on this ruling, it is evident that no conspiracy claim remains against Rockingham County. Accordingly, count VIII of the plaintiff's amended complaint is dismissed as to Rockingham County.

## Conclusion

The motion for summary judgment of defendants Burke, Tucker, and the city of Portsmouth (document no. 29) is granted as to the plaintiff's claims under 42 U.S.C. § 1983. As the remaining claims against these defendants seek relief under state law only, the court declines to exercise its supplemental jurisdiction and dismisses the action as to these defendants. See 28 U.S.C.A. § 1367(c)(3) (West 1993).

Count VIII of the plaintiff's amended complaint is dismissed as to the defendant Rockingham County.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

September 11, 1996

cc:   Brian T. Stern, Esquire
      William G. Scott, Esquire
      Robert B. Gainor, Esquire
      Mark S. Gearreald, Esquire

14