### CORCORAN et al. v. RINESS.
#### No. 943–M.

District Court, S. D. California, Central Division.

May 15, 1937.

Norbert Savay and R. S. Berry, both of Los Angeles, Cal., for plaintiffs.

A. F. Larrabee, of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

This is a suit in equity for an injunction and accounting to restrain the infringement by defendant of two patents. The inventions relate to methods of tile roof construction.

The court at the close of the hearing held the two patents in suit to be valid. The two remaining unsettled issues are:

1. The scope that is attributable to the claims of the patents, and particularly the earlier one, to wit, No. 1,854,660, in the light of the state of the prior art that has been shown in this suit; and

2. The sufficiency of the evidence of infringement by the defendant of any claim in suit.

All claims of the first patent and solely claim 11 of patent 1,948,510 are involved.

The former of these issues does not require much elaboration. The grant of the letters patent is prima facie evidence that the patentees are the first inventors of the device and method described in the patent, and of its novelty. Mumm v. Decker & Sons, 57 S.Ct. 675, 81 L.Ed. ——, April 26, 1937. And the burden of proving want of novelty is heavy and rests upon the defendant who avers it. It must be established beyond reasonable doubt. Mumm v. Decker & Sons, supra. The required degree of proof has not been made.

The only evidence of satisfactory weight describing what had been attempted and accomplished in the branch of tile roof construction that is here involved came from two sources: One—and the most impressive—a blueprint, Defendant's Exhibit K, made April 20, 1926; and another the oral testimony of defendant and others who described in a general way tile stay attempts of defendant in structures in and about Santa Monica, Cal., during the years 1925 to 1928.

The blueprint, Exhibit K, cannot overcome or limit the scope of claims in the patents which dispense with nails or hangers that are driven into the field of the roof whereupon tiles are placed. The exhibit clearly shows spikes in the field of the roof. The novelty of the patents in suit resides in the securing of the tiles in position upon the roof without necessitating driving of nails or other fasteners that produce or cause perforations within the effective field area of the roof.

The oral testimony is also insufficient to deprive the patents of novelty in the inventive feature. Unsupported oral testimony as to structures claimed to have been made many years ago is not of sufficient weight to defeat an otherwise valid patent. Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 450, 36 L.Ed. 154; Eibel Co. v. Paper Co., 261 U.S. 45, 60, 43 S.Ct. 322, 327, 67 L.Ed. 523. Moreover, the oral evidence in this record of any application to practice of any comparable earlier Riness method of roof tile tying is meager and nebulous.

The inventions in controversy, as disclosed by the two patents, overcame the deficiencies in the known art of tiled in-

clined roof construction by providing a continuous strip or runner that either straddles the ridge or is attached over the ridge, or attached at both the ridge and the eaves of the roof, without intermediate fastenings to the field surface of the roof. The tiles are made fast to this strip with wires engaging apertures in the tiles. The tiles are assembled and laid in the conventional manner. The specifications of the patents, and certain of the claims, notably claim 8 in the first and claim 11 of the later, do not limit or restrict the means that may be employed to secure the individual tiles to the strip or runner.

Prior to the application for the earlier of the two patents, the sole method of securing tiles to inclined roofs was by means of a wooden runner that was nailed to the roof directly or to the sheathing and to which runner the tiles were nailed throughout the area from the ridge to the eaves. This method obviously tended to produce apertures and leaks that impair the security of the roof, particularly against water and moisture. The record here shows that until the disclosures of the first patent in controversy no discovery and reduction to commercial practice of a means of fastening tiles to the runners that were not fastened to the effective field of the roof or the sheathing had been made. This was a substantial forward step in the field involved under the existing doctrine of the Eibel Case, supra, as declared by the Supreme Court.

■ It necessarily follows, from the paucity of prior art that is shown in this suit, that the clear claims of patent No. 1,854,-660 are entitled to a liberal range of equivalents, and such claims should be construed so as to preserve the value of the invention to the patentees. Eibel Paper Case, supra.

■ But, although this is the proper construction to be given to the first patent and to its claims, nevertheless, the subsequent patent, to wit, No. 1,948,510, in so far as claim 11 thereof is concerned, is not anticipated and rendered void by the earlier invention, because it is clear that claim 11 and the claims in patent 1,854,-660 are not coextensive, and in such a situation anticipation or double patenting is not shown. Independent Oil Well Cementing Co. v. Halliburton (C.C.A.10) 54 F.(2d) 900, 902.

■ There are in this claim of the later patent the new features of making secure the tie strip or runner with ordinary nails or other fastening under the flashing at the ridge of a roof and providing extruded portions along the strip and tie members for securing the tile to the extruded portions. If this innovation is nothing more than mechanical change, then its use, if proved, will not avoid infringement of the broad claims of the primary patent.

We are finally brought to the ultimate question as to whether or not the complainant has established infringement by defendant of any claim in either patent.

Claim 8 of patent No. 1,854,660 is as follows: "8. In a tile roof construction, the combination of an inclined supporting roof having a continuous water-shedding upper surface, a plurality of tile supporting runners resting loosely upon said water-shedding surface and extending downwardly, tiles disposed in overlapping relation in rows supported on said water-shedding surface overlying the said runners so that the upper ends of the lower tiles extend under the lower ends of the upper tiles, means for securing the individual tiles to the said runners, and means corresponding to each runner and located adjacent the uppermost row of tiles for securing the said runners to the roof, said securing means resisting the pull of all the tiles of each runner exerted by the action of gravity down the roof and forming the sole attachment of the runners to the roof on the effective area of the roof."

There was considerable confusion at the hearing as to the method that has been practiced commercially by the defendant that is claimed to be an infringement of the patent rights of the complainant. This arose by reason of the defendant's exhibition in court of a model (Exhibit I) that contained two different systems, combinations, or methods for tile tying or staying on inclined roofs—roof structures that have a ridge or apex. This model was so constructed that the method of tile tying and placement on one side of the exhibit (called the front part) has an intermediate attachment or tying point, while the other side of the model has no such attachment.

An expert witness, in explaining similarities between the model and the patents, used the wrong side of the model, and of course noted structural and elemental modifications that removed infringement.

Such an erroneous comparison and analysis has no weight in the proper con-

sideration of evidence and the effect of it in a lawsuit.

If the defendant's commercially used method as established by the witness Ogden, and as illustrated by the drawing Exhibit 3, is accepted as the exemplar of defendant's system, and it is so considered by the court, then the broad terms of claim 8 of the earlier patent have been invaded by the defendant in such structure and combination.

Briefly described, the defendant's said structure is a plurality or series of round wire strip sections, one for each tile. These sections are tied together by means of a short hook at one end of one section and a protruding eyelet or loop at the adjacent end of a contiguous section. Thereby there is formed and made a continuous runner when the row of tile tying or securing is completed, the separate tile being held on such runner by extending or extruding a bend in the strip sections through a hole in the tile. The tiles are thus hung on the bends in the runner, so that such bends constitute means functioning to attach the tile to a runner.

The preferred, but not the sole, means specified in the patent for securing the tiles to the runner is a separate wire in the form of a hanger that attaches to the tile at one end and to the runner at the other, hook-like, end. This securing means in defendant's method is the bent integral portions of the wire strip section. This is but the substitution of form or a mechanical equivalent which, under the broad terms of the claim and the verbiage of the specification: "As each row of tiles is laid, the tiles are secured to hangers 4. Any suitable means may be provided for this purpose, but I prefer to provide the hangers with a plurality of links 12 in the form of wires attached to eyes 13 formed equidistant on the runners," does not avoid infringement.

In discussing equivalents in process or method patents, the Eighth Circuit Court of Appeals in Donner v. Sheer Pharmacal Corporation, 64 F.(2d) 217, 223, quoted approvingly the following language of Walker in his work on Patents:

" 'It is therefore safe to define an equivalent as a thing which performs the same function, and performs that function in substantially the same manner, as the thing of which it is alleged to be an equivalent.'

" 'Substitution of one equivalent for another, in a patented composition of matter, is generally as ineffectual to avoid infringement as is like substitution in a machine. An equivalent for one ingredient of a patented composition of matter is anything which in the composition performs the same function as that ingredient.' "

If the Walker definition of "equivalents" is applied here, the wire hook and eye arrangement in Riness, shown in Exhibits 4 and 5, is only a form change. Both means function substantially the same and are adapted to and do produce the identical result.

Claim 11 of patent No. 1,948,510 reads: "11. In a roof construction, an inclined roof structure having a waterproof covering thereon and flashing at the upper edge thereof, a strip for anchoring tile on the roof structure arranged to lie on said covering and to extend in the direction of the pitch of the roof, means for securing said strip to the roof structure only at a point beneath said flashing, extruded portions along said strip, tile laid over said strip, and tie members for securing the tile to said extruded portions."

Defendant, in the construction testified to by the witness Ogden, fastens a strip for anchoring tile on the roof beneath plaster flashing at the upper edge of the roof, such strip being fastened to the roof only at such point, the lower end of the strip being affixed by hooking or "interlocking" to an adjacent strip, and the entire string of strips being unattached to the field of the roof at any point.

The witness Corcoran testified to the commercial use of methods and systems of tile roof construction that embody the two claims just discussed, and inasmuch as the sole novel or inventive feature in the second patent over the earlier one resides in the anchoring or attachment under or beneath the flashing at the ridge of the roof, the employment of this additional feature in combination with defendant's strip or runner, as shown by the evidence, is also infringement of such claims.

There is no infringement in using a construction wherein there is intermediate attachment of a runner in the effective field of the roof, because the basic inventive feature in both patents, as heretofore stated, is the concept of obviating and making unnecessary any such intermediate attachment.

348

There have been brought into the suit claims for aggravated damages against defendant by reason of alleged "unfair competition" in trade contacts and by the use of the term "Tile Tie" in his business. We think there is no merit in such claims under the evidence, and moreover that the mere term "Tile Tie" when etymologically used and syntactically arranged is entirely descriptive and has not in this suit been shown to be the subject of monopoly or exclusive right by complainants. The unique way in which the trade mark of complainants arranges two words that are pronounced the same as "Tile Tie" has not been employed by the defendant.

There has been no satisfactory evidence that these two descriptive English words, or the combination of them, is attended with such peculiar or special identification to complainants or to the patents or to the business of complainants that their descriptive and public origin and use has been lost.

Patent No. 1,854,660 and claim 8 thereof, and patent No. 1,948,510 and claim 11 thereof, are respectively held to be valid and infringed by defendant as specified in this memorandum, and a decree for injunction and accounting is accordingly ordered. Solicitors for complainants will prepare, serve, and file under the rules, findings of fact, conclusions of law, and decree, pursuant hereto. Exceptions allowed all parties on all adverse rulings.