CORCORAN et al. v. RINESS.

No. 9922.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1942.

Rehearing Denied Aug. 5, 1942.

Collins Mason, of Los Angeles, Cal., for appellants.

Arthur F. Larrabee, of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

<hr>

MATHEWS, Circuit Judge.

Patent No. 1,854,660 was applied for by Emmet G. Martin on April 27, 1929, and was issued to him and his assignees, Thomas D. Corcoran, Merrill W. Hard and Lionel A. Wolff,[1] on April 19, 1932. To Tyle Tye Incorporated, Limited, a corporation (hereafter called Tyle Tye), the patentees granted an exclusive license to make, sell and use the devices and structures covered by the patent throughout the United States.

On May 28, 1936, Martin, Corcoran, Hard, Tyle Tye and Wolff's administratrix[2] brought an action (No. 943) against A. H. Riness (hereafter called defendant) for infringement of the patent. Answering, defendant alleged that all claims of the patent were invalid and denied that he had infringed any claim thereof. Trial was had, findings of fact, conclusions of law and a written opinion[3] were filed and, on September 23, 1937, judgment was entered holding that all claims of the patent were valid and that defendant had infringed claim 8 thereof, enjoining further infringement and ordering an accounting of profits and damages. From that judgment no appeal was taken.

On June 2, 1938, Corcoran, Hard, Tyle Tye, Wolff's administratrix and Martin's administrator[4] (hereafter called plaintiffs) brought an action (No. 1397) against defendant for infringement of claims 1, 2, 5, 6 and 8 of the patent. This infringement, the complaint alleged, was subsequent to the entry of judgment in action No. 943. Answering, defendant denied that there was any such infringement. Trial was had, findings of fact and conclusions of law were filed and, on May 9, 1941, judgment was entered holding that there was no infringement and dismissing action No. 1397. From that judgment plaintiffs have appealed.

The patent relates to tile roof construction. The specification states: "It is the present practice in attaching tiles to wooden roofs to employ nails or hangers that are driven at different points throughout the area of the roof to secure the tiles in position. In driving these nails the tiles are sometimes broken, and furthermore this means of securing the tiles is also objectionable because it frequently causes the roofs to leak at the points where the fasteners are driven into the roofs. The general object of this invention is to provide a tile roof construction having simple means for facilitating the laying of the tiles and securing the same in position without necessitating driving of nails or other fasteners or creating any perforations throughout the area of the roof."

These "simple means" are described in the specification as "tile supporting runners * * * consisting of elongated cables or wires either flat or round strips," to which the tiles are secured by means of "links[5] in the form of wires attached to eyes formed equidistant on the runners," or by other suitable means. Each runner, if designed for a gable roof, is in two sections attached together at a point over the ridge, each section extending downward and resting upon one section of the roof. "In this type of roof," the specification states, "the presence of the ridge makes it unnecessary to secure the runners in place because the weight of the tiles on one roof section will balance the tiles on the opposite roof section." If the roof has no ridge, the upper ends of the runners are attached to the upper edge of the roof. Otherwise, the runners remain unattached. Thus, whether used on a gable roof or on a roof of some other type, "the runners are unattached to the water-shedding surface of the roof over its effective area." The absence of any such attachment is a distinguishing feature of the alleged invention and is the only feature for which novelty is claimed.

Claims 1, 2, 5 and 8 are for combinations each of which comprises "an inclined supporting roof having a continuous water-shedding upper surface" and "a plurality of tile supporting runners." In claim 1 the runners are described as being "supported at an elevated point on the roof and extending downwardly" and as "resting unattached on the roof at their lower portions." In claims 2 and 5 the runners are described as "resting unattached throughout the area of the roof." In claim 8 the runners are

---

[1] Each acquiring a one-fourth interest.

[2] Wolff having died before action No. 943 was commenced.

[3] Corcoran v. Riness, D.C.S.D.Cal., 19 F.Supp. 344.

[4] Martin having died before action No. 1397 was commenced.

[5] Each link is provided with an extension or hook which is passed through a small opening in the upper end of a tile, thus securing the tile to the link which, in turn, is attached to the runner.

described as "resting loosely upon said water-shedding upper surface." There is no evidence that defendant has made, sold or used any of these combinations.

■ Claim 6 reads as follows: "As a new article of manufacture for supporting tiles on a gable roof, a runner comprising two sections to rest respectively upon the two inclined sides of the roof with a connection connecting said sections at the ridge of the roof, and having means at a plurality of points on the same for securing tiles thereto." When claim 6 is read, as it must be, in the light of the specification (L. McBrine Co. v. Silverman, 9 Cir., 121 F.2d 181, 182), it is clear that, as used therein, the term "runner" means a tile-supporting device, consisting of a cable, a wire or a flat or round strip, which is "unattached to the water-shedding surface of the roof over its effective area." There is no evidence that defendant has made, sold or used any such device.

The evidence shows that, since September 23, 1937,[6] defendant has made and sold, for use in tile roof construction, devices called tile ties, consisting of cables or wires provided with means for securing tiles thereto. Plaintiffs contend that defendant's tile ties are identical with or equivalent to plaintiffs' runners hereinabove described. This contention is rejected; for, unlike plaintiffs' runners, defendant's tile ties are designed to be and are attached, by means of nails or staples, to the water-shedding surface of the roof over its effective area. Since, as shown above, the absence of any such attachment is an essential characteristic of plaintiffs' runners, defendant's tile ties cannot be regarded as their equivalent.

In tile roof construction, two kinds of tiles are used—lower (concave) tiles, sometimes called pan tiles, and upper (convex) tiles, sometimes called cover tiles. Plaintiffs' runners may be used with either or both. So may defendant's tile ties. Whether used with pan tiles or with cover tiles, plaintiffs' runners remain unattached to the water-shedding surface of the roof over its effective area. Plaintiffs say that this is likewise true of defendant's tile ties when used with cover tiles. Plaintiffs are mistaken; for, although nails or staples are not directly applied to tile ties used with cover tiles, they are directly applied to tile ties used with pan tiles, and the former are "anchored" to the latter by means of metal links. Thus all the ties, including those used with cover tiles, are attached to the water-shedding surface of the roof over its effective area.

■ Plaintiffs assert that the tile ties here involved and the devices which, in action No. 943, were held to infringe claim 8 of the patent are "full equivalents." The assertion is not borne out by the record. The evidence clearly shows that the tile ties here involved differ materially from the devices involved in action No. 943. We conclude, as did the court below, that, in the present action (No. 1397), infringement was not shown.

Judgment affirmed.

STEPHENS, Circuit Judge (dissenting). I dissent. I think there was infringement.

---

[6] The date on which judgment was entered in action No. 943.