Beall v. Leavitt, et al.                CV-98-372-M     08/31/99
                          UNITED STATES DISTRICT COURT

                            DISTRICT OF NEW HAMPSHIRE


Justin T. Beall,
        Plaintiff

        v.                                          Civil No. 98-372-M

Marc Leavitt, David Gunter, Don Clay,
Bruce Brunelle, City of Laconia, NH,
Hillsborough County, and Belknap County,
        Defendants


                                O R D E R


        Plaintiff, Justin Beall, brings this seven count complaint
against various police officers and the municipal entities that
employ them, seeking damages for alleged violations of his
federally protected constitutional rights.  See 42 U.S.C. § 1983.
He also asserts several causes of action based upon state law,
over which he asks the court to exercise supplemental
jurisdiction.  Each of the defendants has moved for summary
judgment as to some or all of the counts in plaintiff's
complaint.  Plaintiff objects.


                          **Standard of Review**

        Summary judgment is appropriate when the record reveals "no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

## Background

Viewing the record in the light most favorable to plaintiff, the pertinent facts appear as follows. On June 16, 1995, plaintiff and some friends attended the annual "Motorcycle Weekend" in Laconia, New Hampshire. At some point during the day, Officer Leavitt of the Laconia Police Department, observed plaintiff drinking beer from a can. Leavitt approached plaintiff and his companions and told them that public consumption of alcohol was prohibited by local ordinance. Accordingly, he instructed them to empty the open beer cans and throw them away. Plaintiff and his companions eventually complied.

Later that day, after purchasing some food, plaintiff and his companions moved to a location where they planned to eat their meals. Plaintiff reached into his cooler and retrieved two cans of beer - one for himself and one for a friend. Shortly after he opened his beer, plaintiff was again approached by

2

Officer Leavitt, who was accompanied by Deputy Sheriff Clay of the Hillsborough County Sheriff's Department. According to plaintiff, Leavitt told him that he was going to be given a citation for possessing an open container of alcoholic beverage. Initially, plaintiff claims that Leavitt said nothing about being taken into protective custody or being placed under arrest.

During his conversation with Officer Leavitt, plaintiff says that he behaved in neither a threatening nor confrontational manner. He did open a can of Diet Coke, however, and, when Leavitt realized that plaintiff had opened a beverage can, he "angrily and violently knocked the Diet Coke can from [plaintiff's] hand." Plaintiff's memorandum in opposition to summary judgment (document no. 22) at 2. Plaintiff says that Leavitt then informed him that he was under arrest (again, plaintiff claims that there was no mention of his being taken into protective custody). According to plaintiff, he compliantly placed his hands behind his back to allow Leavitt to place him in handcuffs. He says that he did not resist arrest and neither physically challenged nor threatened Leavitt in any way. (Both Officer Leavitt and Deputy Sheriff Clay take issue with plaintiff's recollection of those events and they recount a decidedly different version of plaintiff's conduct.)

3

Prior to securing plaintiff in handcuffs, and for reasons that are very much disputed, Leavitt wrestled plaintiff to the ground. Deputy Clay witnessed, but did not become involved in, the brief fracas, during which plaintiff sustained an injury to his knee. After plaintiff was secured in handcuffs, an ambulance was summoned and he was transported to a local hospital for treatment.

Approximately two hours later, plaintiff was released from the hospital. At that time, he claims to have first learned that the officers intended to place him in protective custody, pursuant to New Hampshire Revised Statutes Annotated ("RSA"), chapter 172-B. Plaintiff's girlfriend, who had not been drinking on that day, offered to take custody of plaintiff and ensure that he got home safely. The officers declined her invitation and plaintiff was turned over to Officer Gunter so that he might be transported from the hospital to the Belknap County House of Corrections. Plaintiff claims that neither Gunter nor the officers at the house of corrections took any independent steps to determine whether he was intoxicated or otherwise properly subject to detention under the State's protective custody law.

In short, plaintiff claims that he was unlawfully arrested

4

(or otherwise "seized"), assaulted, and falsely imprisoned. Defendants vigorously dispute plaintiff's version of the events, claiming, among other things, that he was publically intoxicated, confrontational, combative and, ultimately, lawfully detained under the protective custody statute. Moreover, they say that although plaintiff's girlfriend attempted to calm him down during much of his confrontation with the police, she was unsuccessful and plaintiff simply dismissed or ignored her. Accordingly, Officer Leavitt says he decided, in light of the girlfriend's inability to control or calm plaintiff, that plaintiff should be taken into protective custody.

**Discussion**

I.   The Governing Law.

A.   Section 1983 and Qualified Immunity.

In order to succeed on his excessive force and unlawful seizure claims under 42 U.S.C. § 1983, plaintiff must prove that one or more of the individual defendants, acting under color of state law, deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See, e.g., Blessing v. Freestone, 520 U.S. 329, 340 (1997). Depending upon the circumstances surrounding plaintiff's alleged deprivation, however, those individual defendants may be entitled

5

to the protections of qualified immunity.

The doctrine of qualified immunity provides that, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine recognizes that "officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." Davis v. Scherer, 468 U.S. 183, 195 (1984). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987). As the Court of Appeals for the First Circuit has cautioned, however:

> [I]n assessing a claim of qualified immunity, it is not
> sufficient for a court to ascertain in a general sense
> that the alleged right existed, otherwise "plaintiffs
> would be able to convert the rule of qualified immunity
> . . . into a rule of virtually unqualified liability
> simply by alleging violation of extremely abstract
> rights."

<u>Borucki v. Ryan</u>, 827 F.2d 836, (1st Cir. 1987) (quoting <u>Anderson</u>, 483 U.S. at 639). "To be 'clearly established,' the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 228 (1st Cir. 1992) (quoting <u>Anderson</u>, 483 U.S. at 640)). "The determination whether or not a party is entitled to qualified immunity is a legal decision and it is reserved for the court." <u>Whiting v. Kirk</u>, 960 F.2d 248, 250 (1st Cir. 1992).

B.    New Hampshire's Protective Custody Statute.

At the core of plaintiff's § 1983 claims is the allegation that Officer Leavitt lacked lawful authority to take him into custody pursuant to New Hampshire's protective custody statute, RSA 172-B:3. Each of plaintiff's claims against the various defendants is related to, or flows from, Leavitt's initial decision to take him into custody and detain him in the Belknap County House of Corrections. The portions of the protective custody statute which are relevant to this case provide as follows:

> When a peace officer encounters a person who, in the judgment of the officer, is intoxicated as defined in RSA 172-B:1,X, the officer may take such person into protective custody and shall take whichever of the

7

following actions is, in the judgment of the officer, the most appropriate to ensure the safety and welfare of the public, the individual, or both:

(a) Assist the person, if he consents, to his home, an approved alcohol treatment program, or some other appropriate location; or

(b) Release the person to some other person assuming responsibility for the intoxicated person; or

(c) lodge the person in a local jail or county correctional facility for said person's protection, for up to 24 hours or until the keeper of said jail or facility judges the person to be no longer intoxicated.

RSA 172-B:3, I. The statute defines "intoxicated" as "a condition in which the mental or physical functioning of an individual is substantially impaired as a result of the presence of alcohol in his system." RSA 172-B:1, X.[1]

II. The City of Laconia, Officer Leavitt, and Officer Gunter.

A. The City and the Officers in their "Official Capacity."

The City moves for summary judgment as to counts two (excessive force) and three (unlawful seizure) of plaintiff's

---

[1] It is, perhaps, worth noting that the statute imposes additional obligations upon police officers when they take into custody (or assume custody of) a person who is "incapacitated," rather than merely "intoxicated" (e.g., contacting an alcohol treatment program or hospital emergency room for treatment). There is, however, no claim that plaintiff was "incapacitated" at any point during his encounter with defendants and, therefore, those additional statutory obligations are not relevant here.

8

complaint.  In order to prevail against the City with regard to those § 1983 claims, plaintiff must establish that: (a) one or more of the individual employees of the City violated his constitutionally protected rights; and (b) the unconstitutional conduct of the individual defendant(s) either implemented or was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers."  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978).  To carry his burden with regard to the second element, plaintiff must establish that:

> through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original).  Finally, to the extent that he claims that his injuries were the product of the City's failure to adequately train its police officers, plaintiff must establish that such a failure to train amounts to a "deliberate indifference to rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the

9

rights of its inhabitants can such a shortcoming be properly thought of as a city "custom or policy" that is actionable under § 1983." Id., at 389.

The record in this case demonstrates that the City of Laconia is entitled to judgment as a matter of law with regard to plaintiff's federal claims. Notwithstanding plaintiff's largely unsupported assertions to the contrary, there is no evidence from which a reasonable trier of fact could rationally conclude that the City demonstrated a "deliberate indifference" to the rights of its citizens in allegedly failing to adequately train its police officers or by promulgating (or even tolerating) any custom or policy which might have been the motivating force behind plaintiff's alleged constitutional deprivations. To the contrary, there is uncontroverted evidence that the City provided its officers with substantial training concerning, among other things, arrest procedure and the use of non-deadly force to secure compliance by individuals resisting arrest. See generally Affidavit of Robert Babineau, Chief of Laconia Police Department, and accompanying exhibits. The City of Laconia is, therefore, entitled to judgment as a matter of law with regard to counts 2 and 3 of plaintiff's complaint. Similarly, because "official capacity" suits are nothing more than claims against the

municipality, defendants Leavitt and Gunter are entitled to judgment as a matter of law in their "official capacities" with regard to those counts.

B. Officer Gunter in his Individual Capacity.

The basis for Officer Gunter's alleged liability under count 3 of plaintiff's complaint (unlawful seizure) is unclear. It is undisputed that Gunter had very little contact with plaintiff on the day in question. After Officer Leavitt determined that plaintiff would be taken into protective custody (and after plaintiff had received treatment at the hospital), Gunter merely took custody of plaintiff and transported him to the county correctional facility. The decision to take plaintiff into protective custody was Leavitt's, not Gunter's. See Leavitt deposition at 89 ("it was my decision, and I told [Officer Gunter] that [plaintiff] was going to Belknap County Jail."). Nevertheless, plaintiff suggests that Gunter had some independent obligation to reassess Leavitt's decision to take him into protective custody. By allegedly breaching that duty, Gunter, says plaintiff, exposed himself to liability under § 1983 for the allegedly unlawful seizure. The court disagrees.

11

Gunter was not present when plaintiff's confrontation with police unfolded on the streets of Laconia. Accordingly, he was in no position to assess plaintiff's degree of intoxication, or the nature of his belligerent behavior or combativeness with the officers, or the degree of danger that he posed to himself or others as a result of his intoxication. Instead, Gunter simply (and reasonably) relied upon the professional judgment of a fellow police officer, who did personally observe plaintiff's demeanor and conduct and who determined that there was a reasonable and lawful justification for taking plaintiff into protective custody (the bases for which all occurred approximately two hours before Gunter had any contact with plaintiff).

Having been informed that plaintiff (who still appeared to be under the influence of alcohol) was being taken into protective custody and having been directed merely to transport plaintiff to the county correctional facility, Gunter had no obligation to independently assess the validity of Leavitt's decision. See, e.g., Thompson v. Olson, 798 F.2d 552 (1st Cir. 1986). In Thompson, the court considered the degree to which an arresting officer had an ongoing obligation to continuously

12

reassess his determination that probable cause existed to effectuate a lawful arrest.

> Generally, once the arrest has been properly effected, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released. We do not, however, intimate that a police officer, upon an initial finding of probable cause, may close his eyes to all subsequent developments. He may not. Probable cause to arrest does not suspend an officer's continuing obligation to act "reasonably." On the other hand, having once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car. . . . [F]ollowing a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded.

Id., at 556. See also McConney v. City of Houston, 863 F.2d 1180, 1185 (5th Cir. 1989) ("We conclude that a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so.").

13

Here, of course, Gunter was not the "arresting officer." Nevertheless, the court's opinion in Thompson is persuasive. Nothing in the record suggests (and plaintiff does not claim) that, based upon his limited contact with plaintiff, Gunter should reasonably have concluded, beyond a reasonable doubt, that there was no basis for plaintiff to be taken into protective custody, particularly since he had observed none of plaintiff's conduct which prompted Officer Leavitt to detain him. Officer Gunter is, therefore, entitled to judgment as a matter of law as to count 3 of plaintiff's complaint.

C.   Officer Leavitt in his Individual Capacity.

Officer Leavitt also moves for summary judgment as to count 3 of plaintiff's complaint, asserting that he is entitled to the protections of qualified immunity. On the record presently before it, however, the court disagrees.

The parties recount vastly different versions of the facts which prompted Leavitt to take plaintiff into protective custody. They also disagree as to the reason(s) Leavitt wrestled plaintiff to the ground (thereby injuring plaintiff's knee). Leavitt claims that he reasonably and justifiably believed that plaintiff was publically intoxicated and, based upon his confrontational

14

and combative behavior, posed a danger to himself and/or others (in particular, his girlfriend).  He also asserts that his having tackled plaintiff to the ground was a measured and reasonable response to plaintiff's violent efforts to resist arrest.  Plaintiff and his girlfriend, on the other hand, paint a different picture of what transpired.  Plaintiff's girlfriend testified that plaintiff was cooperative and complaint with the officers.  She also said that plaintiff did not resist arrest in any way, thereby suggesting that Leavitt's decision to wrestle plaintiff to the ground was unjustified.  See Affidavit of Sarah Kean, paras. 4, 7, and 8.

As this court noted in Glover v. Crawford, No. 94-26-M, slip op. (D.N.H. May 24, 1996), a case which involved a similar suit arising out of an officer's decision to take a participant in motorcycle weekend into protective custody, the police officer's "entitlement to qualified immunity from liability in this case depends on whether his version of the facts or plaintiff's radically different version of the facts surrounding the arrest and detention is credited. . . Plaintiff is entitled to present his version to a jury because if his version of the facts is correct, liability will surely follow." Id., at 14.  So it is in this case.  If a jury credits Officer Leavitt's version of the

15

facts, Leavitt will be entitled to judgment (either on the merits or because he will be entitled to qualified immunity). If, however, the jury credits the facts as presented by plaintiff and his girlfriend, Leavitt may be liable for having unlawfully taken plaintiff into custody. Officer Leavitt's motion for summary judgment as to count 3 is, therefore, necessarily denied, given the apparent dispute as to decidedly material facts.

III. <u>Hillsborough County and Deputy Sheriff Clay</u>.

    A.    The County and Deputy Sheriff Clay in his "Official Capacity."

As noted above, in order to prevail against a municipal defendant with regard to a § 1983 claim, a plaintiff must establish that the unconstitutional conduct of the individual defendant(s) either implemented, or was undertaken pursuant to, "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." <u>Monell</u>, 436 U.S. at 690. Plaintiff has failed to identify any such custom, policy, ordinance, or regulation implemented or adopted by Hillsborough County. <u>See</u> Plaintiff's memorandum (document no. 22) at 31.[2]

_____

    [2]    It appears that plaintiff submitted to the court an incomplete memorandum in opposition to summary judgment. For example, with regard to Hillsborough County's motion for summary judgment as to count 3, the memorandum provides:

16

Accordingly, Hillsborough County is entitled to judgment as a matter of law with regard to plaintiff's § 1983 claims. Likewise, Hillsborough County Deputy Sheriff Clay is entitled to judgment as a matter of law with regard to all such claims against him in his official capacity.

B.    Deputy Sheriff Clay in his Individual Capacity.

As to count 2 of plaintiff's complaint (excessive force), the record demonstrates that Deputy Sheriff Clay is entitled to judgment as a matter of law.  Notwithstanding the factual allegations set forth in the complaint, plaintiff made clear at his deposition that Clay had no physical contact with him at any time during that period relevant to this suit.

---

> Defendant Hillsborough County moves for summary judgment claiming that Plaintiff does not identify or describe the policy or practice which he claims violated his constitutional rights.  The disputed fact on this issue exists and in the following . . . [sic]

Plaintiff's memorandum at 31.  Thus, while plaintiff acknowledges his obligation to point to a municipal custom or policy which caused the alleged violation(s) of his constitutional rights, he neglected to develop that point.  Plaintiff's arguments with regard to Hillsborough County Deputy Sheriff Clay are similarly undeveloped.  See id., at 31-32 (e.g., "The allegations giving rise to this dispute [are] as follows . . . . [sic]").  It appears counsel intended to later fill in the "disputed facts" blanks, but never did.  Consequently, the court views plaintiff as having waived those claims.  See generally, United States v. Olano, 507 U.S. 725, 733 (1993) (discussing the distinction between waiver and forfeiture).

Question: And what was the next paragraph of the
         Complaint where you found an error?

Answer:  On page 5, Paragraph 34.

                    * * *

Question: Is there anything else in Paragraph 34 that you
         want to change?

Answer:  Yes.

Question: What's that.

Answer:  And that Donald Clay never had anything to do with
         putting me to the ground.

Deposition of Justin Beall at 24. See also id., at 171 (explaining that plaintiff's claims against Clay were not related to Clay's having touched or assaulted him in any way.).

Of course, the court of appeals for this circuit has observed that:

> "an officer who is present at the scene of an arrest and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance," provided that he had a "realistic opportunity" to prevent the other officer's actions.

Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990)). Accord O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d

18

Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.").

Plaintiff has not, however, alleged that Clay had an adequate or "reasonable" opportunity to prevent Leavitt from wrestling plaintiff to the ground, an event which all parties agree happened very quickly as Leavitt was attempting to escort plaintiff away from the scene. See generally O'Neill, 839 F.2d at 11 ("[T]here is insufficient evidence to permit a jury reasonably to conclude that Conners' failure to intercede was a proximate cause of the beating. The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."); Jesionowski v. Beck, 937 F.Supp. 95, 105 (D.Mass. 1996) ("According to [plaintiff], the two kicks to his head occurred one right after the other in quick succession. It follows that, even if [defendant] did observe the use of excessive force during [plaintiff's] arrest, he had no realistic opportunity to intervene. Thus, [defendant] cannot be held liable under the § 1983 claim."); Noel v. Town of Plymouth, 895

19

F. Supp. 346, 352-53 (D.Mass. 1995) ("[T]he plaintiff's purported injuries are most consistent with a scuffle of quick duration, involving a blow to the face followed by a blow to the back. This court concludes that, if a wrongful beating occurred, [defendants] had no realistic opportunity to intervene, and cannot be held liable for failing to do so.")

Deputy Sheriff Clay is also entitled to judgment as a matter of law with regard to count 3 of plaintiff's complaint (unlawful seizure). It is important to note that on the day in question, Clay was not Leavitt's "supervisor" or "senior officer." He was a member of an entirely different law enforcement agency (i.e., Hillsborough County Sheriff's Department) who was simply acting as Officer Leavitt's partner in conducting foot patrol of the streets of Laconia. The essence of plaintiff's complaint against Clay - at least as it relates to his claim of unlawful seizure - is that Clay owed (and breached) a duty to intervene and "overrule" Leavitt's decision to take him into custody. See Plaintiff's deposition at 171 ("I think Officer Clay should have interfered on what [Officer] Leavitt was doing to me. I don't think that he should have just stood there and watched everything go down. Maybe [he] thinks that Officer Leavitt was in the right. I don't thing he was in the right. I think Officer Clay

20

should have stepped in and just tried to calm this guy down a little bit.").

As noted above, the decision to take plaintiff into custody was exclusively Leavitt's, based upon his own, personal determination that plaintiff was "intoxicated," as that term is defined in RSA 172-B and, therefore, subject to protective custody. Plaintiff does not allege that Clay had any input into that decision. And, equally importantly, he has pointed the court to no law which suggests that Clay had an obligation (and, presumably, the authority) to intervene and overrule Leavitt's decision.

Moreover, even if he were not entitled to judgment on the merits of plaintiff's claim, Clay would be entitled to the protections afforded by qualified immunity. It cannot be said that plaintiff had a clearly established right to have a Deputy Sheriff intervene and "overrule" a Laconia Police officer's discretionary decision to take plaintiff into protective custody under RSA 172-B.

IV. Belknap County and Officers Brunelle and Carter.

A. The County and the Officers in their
Official Capacities.

21

In count three of his complaint, plaintiff alleges that Corrections Officers Brunelle and Carter and their employer, Belknap County, violated his Fourth and Fourteenth Amendment rights by knowingly and deliberately perpetuating his unlawful detention. Plaintiff has not, however, asserted that his alleged constitutional deprivations were the product of any Belknap County custom or policy, nor has he attempted to identify or define the scope of such a policy. Accordingly, Belknap County and Officers Brunelle and Carter, in their official capacities, are entitled to judgment as a matter of law on Count 3.

B. The Officers Individually.

As to Officers Brunelle and Carter in their individual capacities, plaintiff asserts that they violated his constitutional rights to be free from unlawful seizures by failing to re-evaluate Officer Leavitt's determination that there was probable cause to take plaintiff into protective custody. In resolving plaintiff's claim, it is again appropriate to turn to the language of the protective custody statute, which provides, in relevant part:

> No local jail or county correctional facility shall refuse to admit an <u>intoxicated or incapacitated person</u> in protective custody whose admission is requested by a peace officer, in compliance with the conditions of this section.

22

RSA 172-B:3, IV (emphasis supplied).  Here, plaintiff was detained because, in Officer Leavitt's view, he was "intoxicated," as that term is defined in the statute.

Plaintiff asserts that in order to lawfully take a person into protective custody under RSA 172-B:3, correctional officers at the Belknap County House of Corrections must also make an independent determination as to whether the person sought to be detained is "intoxicated," rather than merely under the influence of alcohol.  Plaintiff reads too much into the protective custody statute.  The obligation to determine probable cause rests with the detaining officer, not with the keepers of the facility to which the intoxicated individual is committed.  Arguably, the correctional officers might be exposed to some liability under § 1983 if they took an individual into custody knowing that he or she was not intoxicated.  Here, however, plaintiff does not allege that either Brunelle or Carter possessed such knowledge.  Instead, he merely asserts that they had (and breached) a duty to more fully investigate the situation and conduct a de novo inquiry into whether he met the statutory definition of "intoxicated."  Contrary to plaintiff's assertions, however, neither Carter nor Brunelle had any constitutional obligation to engage in such an inquiry.  See, e.g., McConney, 863 F.2d at 1185

23

("We conclude that a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so.").

Absent some assertion (supported by admissible evidence) that Officer Brunelle and/or Officer Carter actually knew (or should have known) that plaintiff was not properly subject to the protective custody statute (i.e., was not "intoxicated"), plaintiff cannot prevail against them with regard to his section 1983 claim.

Additionally, it is clear that both Carter and Brunelle are entitled to the protections afforded by qualified immunity. Plaintiff has identified no case law which supports his proposition that the keepers of the correctional facility to which he was transported had a clearly established independent constitutional obligation to redetermine whether there was probable cause to detain him. Consequently, plaintiff has failed to demonstrate that Brunelle and/or Carter knew or should have known that their conduct likely violated any of plaintiff's

24

clearly established rights.  As the Court of Appeals for the

First Circuit recently observed:

> [T]he law must have defined the right in a quite
> specific manner, and [] the announcement of the rule
> establishing the right must have been unambiguous and
> widespread, such that the unlawfulness of particular
> conduct will be apparent ex ante to reasonable public
> officials.  After all, qualified immunity for public
> officials serves important societal purposes, and it is
> therefore meant to protect all but the plainly
> incompetent or those who knowingly violate the law.

Brady v. Dill, ___ F.3d ___, 1999 WL 508812 at *10 (1st Cir. July

22, 1999) (citations and internal quotation marks omitted).


V.    State Claims Against The City of Laconia, Officer Gunter,
      Deputy Sheriff Clay, Hillsborough County, and Correctional
      Officers Carter and Brunelle.

Given the ruling in favor of those defendants with regard to

plaintiff's federal claims, they request the court to decline to

exercise supplemental jurisdiction over plaintiff's state law

claims against them.  See 28 U.S.C. § 1367(c)(3).  It appears

that the court of appeals for this circuit has yet to address the

question of whether a court should exercise supplemental

jurisdiction over state claims against one or more defendants

when all federal claims against those defendants have been

dismissed but some federal claims, arising out of the same

operative facts, remain against one or more other defendants.  At

25

least one legal commentator has suggested that courts presented with that scenario may not decline to exercise supplemental jurisdiction.

> Subsection (c)(3) [of 28 U.S.C. § 1367] requires that <u>all</u> claims over which it has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims. This refers to all claims in the case, not just those claims asserted against a particular defendant. If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present.

16 Moore's Federal Practice, § 106.66[1] (3rd ed. 1998) (emphasis in original). To be sure, some courts interpret the provisions of subsection (c)(3) as vesting them with discretion to retain or dismiss supplemental state law claims under circumstances such as those presented here. <u>See, e.g.</u>, <u>Lentz v. Mason</u>, 961 F.Supp. 709, 717 (D.N.J. 1997); <u>Kis v. County of Schuylkill</u>, 866 F.Supp. 1462, 1480 (E.D.Pa. 1994). Nevertheless, regardless of whether the court's exercise of supplemental jurisdiction over plaintiff's state law claims against the City, et al. is discretionary or mandatory, the circumstances of this case warrant the exercise of such jurisdiction. <u>See generally Wiggins v. Philip Morris, Inc.</u>, 853 F.Supp. 458, 468-69 (D.D.C. 1994).

26

## Conclusion

For the foregoing reasons the court rules as follows with regard to defendants' pending motions for summary judgment.

(1)    The motion for summary judgment filed by the City of Laconia, Marc Leavitt, and David Gunter (document no. 17) is granted in part and denied in part. The City is granted judgment as a matter of law as to counts 2 (excessive force) and 3 (unlawful detention). Officer Gunter is granted judgment as a matter of law as to count 3. Finally, because there exist genuine issues of material fact, Officer Leavitt's motion for summary judgment as to count 3 is denied.

(2)    The motion for summary judgment filed by Hillsborough County and Deputy Sheriff Clay (document no. 19) is granted in part and denied in part. As to counts 2 and 3, defendants are granted judgment as a matter of law. In all other respects, their motion is denied.

(3)    The motion for summary judgment filed Belknap County and Correctional Officers Brunelle and Carter is granted in part and denied in part. As to plaintiff's federal claims against them (count 3), those defendants are granted judgment as a matter of law. In all other respects, their motion is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 31, 1999

cc:  Brian T. Stern, Esq.
     Steven E. Hengen, Esq.
     Douglas N. Steere, Esq.
     Donald J. Perrault, Esq.
     Donald E. Gardner, Esq.